SAMUEL T. CHAMPNEY, Administrator, &c., of MARY CHAMP-
NEY, deceased, Appellant, *v.* DAVID COOPE and others,
Respondents.

It seems, that the payment by the mortgagor of money to the mortgagee, and
the taking of an assignment of the mortgage, does not necessarily extinguish
the mortgage, where the intent of the parties thereto is that the mortgage
shall be kept alive, and where the equitable rights of innocent parties require
that it should be.

But money paid to the mortgagee, designed at the time to be applied as a payment
upon the mortgage, will operate to extinguish the mortgage to that amount.

The union of the legal and equitable estate in the same person, does not neces-
sarily effect a merger of the equitable estate, where the intent of the parties
and equitable rights require them to be kept distinct.

The debtor and creditor becoming the same person, equity will preserve the
equitable distinct from the legal rights, according to the intent of the parties
and the just requirements of the case.

The facts of the case sufficiently appear in the opinion of
DAVIES, J.

*Theodore Hinsdale*, for the appellant.

The *onus probandi*, as to all matters in dispute, is on the
defendants.

The referee decided, and correctly, that the bond and mort-
gage was not extinguished before they were assigned to Miss
Jacobs, and that they were still outstanding and valid securities.

The Supreme Court erred in assuming the debt to be that
of David Coope, and not that of Mrs. Coope.

Miss Jacobs was a *bona fide* purchaser of the mortgage, and
was never informed or understood that it was paid off.

This is not a case of latent equities between the mortgagor
and mortgagee to which the assignment is necessarily subject.

The question whether it was a payment or a purchase, is
one of intent at the time the money was paid.

*W. B. Ackley*, for infant defendants.

The payments by David Coope of $1,000 in May, 1850,
and $200 in January, 1855, operated to extinguish the mort-

gage debt to that extent, and left only $3,800 due as principal. The receipts given by the defendants show that these payments were absolute.

David Coope, on the 4th of October, 1855, and on the first day of February, 1856, was chargeable with the balance of $3,800.

1. As executor of his mother;

2. As guarantor or surety to the mortgagee;

3. As the real debtor, bound by his agreement with his mother to pay the mortgage debt and interest.

Being thus liable, it is submitted that it was not competent for him to keep the security still alive, while advancing money upon the mortgage in either of the above capacities.

Between the time David Coope received the assignment of the mortgage in blank, and the time he filled in the name of the assignee and appellant, the mortgagee was not entitled to foreclose the mortgage, for she was paid in full. The plaintiff was not entitled, for she had no agreement with the mortgagee; nor does it appear that she had then advanced any particular sum on this security. David Coope could not have foreclosed it as a surety who had paid the debt of his principal, against the owners of the equity of redemption; for, as to them, he was himself bound to pay it.

*Emmott & Van Cott*, for the respondents.

Mary Champney was not a *bona fide* purchaser or assignee of this mortgage. She was chargeable with notice of the actual facts.

She made no inquiries as to the title or the transfer of this security, therefore she has no equities.

The money paid to Mrs. James, did not come from Mary Champney, but was the money of David Coope. The payments of $1,000, and also of $200, were made by David Coope before there had been any idea suggested of transferring the mortgage to the plaintiff.

Therefore David Coope did not act as the agent of Mary Champney in paying Mrs. James the money for this mortgage.

David Coope had full knowledge of the facts, and his rela-

tion to the matter was such that he could not hold or enforce the mortgage against Jane Coope, or her estate.

As between the mortgagor and mortgagee, this mortgage was extinguished in February, 1856, by the payments made by D. Coope.

The assignee of the mortgage took no better title than her assignor had, and she stands in her shoes. (See 22 N. Y., 553; 18 id., 557.)

DAVIES, J.   This is an appeal from an order of the General Term of the Third District, reversing a judgment in favor of the plaintiff, entered upon the report of a referee, and granting a new trial.   The plaintiff stipulates that, if the order is affirmed, judgment absolute may be rendered against him.   The action was commenced in 1860, to foreclose a mortgage made and executed by one Jane Coope, bearing date July 13, 1844, to one Lime T. James, upon a certain farm in the town of Plattekill in county of Ulster.   The mortgage was given to secure the payment of a bond of said Jane Coope, bearing even date therewith, for the sum of $5,000, payable at the expiration of five years from the date thereof, with interest thereon, payable quarter-yearly, and the payment of which bond was guaranteed by one David Coope, the son of the mortgagor.   It is recited in the mortgage that the premises covered by it had been previously conveyed by the said David Coope and wife to the said Jane Coope.   The referee before whom the action was tried, found, as matter of fact, that the mortgage was duly recorded on the 17th of July, 1844, and that by the authority of the said Jane Coope, the said obligor and mortgagor, the said David Coope, who was her son, received the said amount of $5,000, and applied it to his own use.   That said David Coope verbally promised the said Jane Coope to pay the amount of said bond and mortgage when demanded, and that the interest on said bond and mortgage was paid by said David Coope to and including the 13th day of July, 1855.   That on the 1st day of May, 1850, the said David Coope paid to said mortgagee, on account of said principal of said bond and mortgage, the sum of $1,000, and on the

13th day of January, 1855, the further sum of $200. That on the 4th of October, 1855, the said David Coope made and delivered to the said mortgagee, or to her agents with her assent, four promissory notes, amounting in all to the sum of $1,800, and also paid to them in cash the sum of $1,000, and thereupon took a receipt from them, expecting said payment and the making and delivery of said notes, and that the same, with the sum of $1,200 previously paid, was the full amount due on said bond and mortgage, and the said mortgagee agreed to assign said bond and mortgage to such person as the said David Coope should name, whenever the said notes should be paid. And the referee further found, that on the 1st of December, 1854, and subsequently thereto, and up to the 3d of March, 1856, the plaintiff's intestate loaned to said David Coope several sums of money, which on that day amounted to the sum of $1,250. That in March, 1856, she loaned to said Coope the further sum of $600, and in April following, the further sum of $400, and also the sum of $600, and in June of the same year, the further sum of $500. That in the summer or fall of 1855, the said David Coope stated to the plaintiff's intestate that he would cause the said mortgage to be assigned to her, as a security for all the money she had loaned him, or should loan him, and also stated to her that the same was a good security. And he further found, that the sums loaned to the said David Coope by the plaintiff's intestate, were loaned upon the faith of the said statement. That on or about the 1st day of February, 1856, the said David Coope paid the said notes mentioned in the receipt of October 4, 1855, and procured an assignment of said bond and mortgage, with a blank left for the name of the assignee, and that thereupon the said bond and mortgage were delivered to the said David Coope, who thereupon, on the 20th of March, 1856, caused the said blank therein to be filled with the name of the plaintiff's intestate, and he then delivered to her said bond and mortgage, and said assignment. The referee further found, as matter of fact, that said David Coope did not intend by said payment to satisfy or extin-

guish the said bond or mortgage, but made the said payment with the intention of keeping the said bond and mortgage alive and outstanding, and transferring them to the plaintiff as valid and subsisting securities. And he further found, that before, or at the time when plaintiff's intestate took the said assignment, she had no knowledge or notice that the said David Coope occupied any other relation to said mortgagor than that of surety or guarantor upon the said bond, or that he had received the moneys originally loaned on said bond and mortgage, or had agreed to pay the same, or that since said bond and mortgage were paid, satisfied or extinguished. And he further found, that plaintiff's intestate received the assignment in good faith, and in full belief that the said bond and mortgage were unsatisfied, and were good and available securities, and that the same could be lawfully assigned to and received by her as such. He further found, that the said David Coope was indebted to the plaintiff's intestate, on the 1st day of July, 1858, in the sum of $5,000. He further found, that the said Jane Coope departed this life in the spring of 1849, having made a last will and testament whereby she devised the said premises to her daughter Mary, for life, with remainder in fee to her children.

And as conclusions of law, the referee found, that the bond and mortgage mentioned in the complaint were not satisfied or extinguished before the same were assigned to the plaintiff's intestate, and that they were still outstanding and subsisting and valid securities. That there was due to the said plaintiff's intestate, on the 1st of July, 1858, the sum of $5,000, and interest thereon from that date, and that the plaintiff was entitled to judgment of foreclosure and sale. Thereupon, such judgment was entered, and on appeal to the Supreme Court, said judgment was reversed, and a new trial ordered. The plaintiff now appeals to this court.

The primary debtor upon the bond and mortgage was Jane Coope, and in the first instance it was her debt to pay. David Coope was her surety, and not the original debtor. The payment made on account of the bond and mortgage, by David Coope, were all made after the death of Jane Coope,

and it does not appear that they were made by him as her agent, or with her funds, and in support of the judgment, we may infer, if such inference is necessary to sustain the judgment, the negative of these two propositions. Whatever may be the equities between David Coope and Jane Coope, it is unnecessary to inquire or to pass upon. No notice of those equities was communicated to Miss Jacobs, and she took the mortgage direct from the original mortgagee, and it is not alleged that any equities existed as between the original parties to the mortgage, which impairs its validity, independent of the payments made by David Coope. It is found as a matter of fact in the primary tribunal, and such finding is conclusive upon the court (the judgment therein not having been reversed upon a question of fact), that such payment was made, with the intent not to satisfy or extinguish said bond and mortgage, but with the intent of keeping the same alive and outstanding, and of transferring them to the plaintiff as valid and subsisting securities.

If, therefore, it be assumed that this payment was made by Jane Coope, or by David Coope as her agent, if made with this intent, no merger took place, even though the bond and mortgage had been reassigned to her, and by her assigned to the plaintiff's intestate. These propositions are abundantly sustained by authority. (*James* v. *Morey*, 2 Cowen, 246; *Davies* v. *Chamberlain*, decided in this court in June, 1860.) In the latter case a mortgage had been given by one individual banker to the comptroller, to secure circulating notes. A deposit was made by the banker with the bank department, sufficient to meet the amount of the outstanding notes, and the banker having negotiated a transfer of the bond and mortgage to the Bank of the Capitol, of the city of Albany, the bank department reassigned the bond and mortgage to the individual banker, and he then assigned it to the Bank of the Capitol, which assigned it to the plaintiff in that action; and in a suit to foreclose the mortgage, the court found that it was not the intent of the parties, by the payment to the bank department and the reassignment to the original mortgagor, to extinguish and satisfy the bond and mortgage, but

to keep them alive as valid and subsisting securities, and this court affirmed the judgment of Supreme Court, which held that no merger had taken place, and that the securities remained valid and unaffected by the payment to the bank department of the amount for which it held them, and the reassignment to the original mortgagor. I am unable to see why the doctrine of that case is not decisive of the one now under consideration.

But in this case there never was an union of the equitable and legal estate, there never was a confusion of rights, where the debtor and creditor became the same person. And even if there had been, equity would preserve the rights distinct, according to the intent as found in this action. The principle is very clearly stated in *Mickles* v. *Townsend* (18 N. Y., 582), by DENIO, Ch. J. He held the doctrine of merger was inapplicable to that case. Merger, he said, in its relation to real estate, occurs when the legal and equitable estates are united. In such cases the equitable estate is merged in the legal title, and is extinguished at law, and generally in equity also, by the unity of seizin. But in that case there was no unity of the equity of redemption, and of the estate mortgaged in Philo D. Mickles. He had parted with the equity of redemption long before he purchased the mortgage. He had also before that time assigned the mortgage of the equity of redemption, which he took back when he conveyed to the plaintiff, so there was nothing upon which to predicate the idea of merger. But if this were otherwise, and if P. D. Mickles had retained the equity of redemption until he had purchased the mortgage, it would, in the view of a court of equity, depend upon his intention when he did the latter act, whether the mortgage should be considered extinguished. By taking an assignment from Hall instead of a satisfaction, and especially by selling and assigning the mortgage to Townsend for a valuable consideration as an existing security, he sufficiently manifested an intention not to extinguish it. In the case now at bar, we have all these *indicia*, which were regarded as so conclusive. We have in the first place the finding of facts, that David Coope, by the payment made,

did not intend to satisfy or extinguish the bond and mortgage, but meant to keep them alive as valid and subsisting securities,.and this intention is confirmed and rendered unquestionable by his taking the assignment of the bond and mortgage in blank, instead of a satisfaction, and especially by selling and assigning the bond and mortgage to the plaintiff's intestate for a valuable consideration. The Supreme Court have supposed that the case of *Harbeck* v. *Vanderbilt* (20 N. Y., 395) was controlling and decisive of this case. They regard that case as holding, that if the payment upon a security be made by the debtor himself, no intent on his part, though existing at the time, to have it operate otherwise than as a satisfaction, will be permitted to have that effect. If he supplies the money, and it is applied upon the instrument, though with the intent to have it subsequently assigned and continued as a valid security, such intent, it is held, is unavailing and incapable of being effectuated.

I think the learned court have misapprehended this decision. In that case one of six judgment debtors paid to the plaintiffs the amount of the judgment, partly in cash and the balance in an indorsed note, and took an assignment of the judgment for the benefit of the indorsee, who subsequently paid the note, and sought to enforce the judgment. One of the judges of this court, in his opinion, said that the judgment, although in one sense paid, is not satisfied, but remains subsisting and valid, until it has answered the purposes for which it was assigned. To have had the effect of an extinguishment, the finding should have gone to the length that the payment made was intended as a satisfaction. "The naked fact that the amount due upon a judgment is paid to the plaintiff is undoubtedly sufficient to justify the legal conclu-. sion that it is satisfied, but the fact of payment connected with an assignment to a third party, to indemnify another with whose credit or money it is paid, instead of establishing a satisfaction of the judgment, establishes the reverse and proves the judgment outstanding." Judge SELDEN, the other judge delivering the opinion in that case, observed: "Where one of several defendants against whom there is a joint judg-

ment, pays to the other party the entire sum due, the judgment thereby becomes extinguished, whatever may be the intention of the parties to the transaction. It is not in their power, by any arrangement between them, to keep the judgment on foot for the benefit of the party making the payment. If, therefore, in such a case the latter take an assignment to himself, or unless under special circumstances, even to a third person for his own benefit, the assignment is void and the judgment satisfied. It is equally clear, says Judge SELDEN, that if the money be paid, *not by one who is a party to the judgment and liable upon it,* but by some third person, the judgment will be extinguished or not, according to the intention of the party paying. The taking an assignment, whether valid or void, affords, under all circumstances, unequivocal evidence of an intention not to satisfy the judgment."

It will be observed, therefore, that the learned judge of this court, in stating the proposition relied upon by the Supreme Court, confines it to a payment by one of several defendants, against whom there is a joint judgment, and the payment is made to the other party of the entire sum due; in such a case the judgment becomes extinguished and cannot be kept alive, whatever may be the intent of the parties.

But we have seen that the doctrine is well settled by authority, in relation to mortgages; that if the amount due thereon is paid, the intent of the parties in making such payment, whether to extinguish or keep alive the security, will govern. The Supreme Court throws in another qualification, and which it doubtless thought material if not controlling, viz.: that if the money is applied upon the instrument, though with the intent to have it subsequently assigned and continued as a valid security, such intent was held to be unavailing. It is apparent from this, that the Supreme Court supposed, that in the present case, the payments made had been applied on the instruments, the bond and mortgage. No such fact is found by the referee, and by reference to the indorsements made on the bond, as set out in the case, it is seen that they are only indorsements of interest paid, and that no payment on account of principal had

been applied on the instruments. Such omission is a striking confirmation of the finding of the referee, that in making the payment it was not intended to satisfy or extinguish the amount due upon the bond and mortgage, in whole or in part. But another reason for the inapplicability of the doctrine, supposed to be laid down in *Harbeck* v. *Vanderbilt*, is, that in this case there was no joint liability of the party making the payment, or any liability primarily upon the instruments claimed to be extinguished by the payments made. As already observed, the remarks of the judge applied only to a judgment, and to a payment made of the entire sum due, by one of the joint judgment debtors. They have no application to the facts presented in this case. There the money was paid by one who was not a party to the bond ; it was not for the payment of his debt, primarily, but that of a third party. And in such a case the doctrine is distinctly enunciated in *Harbeck* v. *Vanderbilt*, that even a judgment will be extinguished or not according to the intention of the party paying, and that the taking of an assignment, whether valid or void, affords, under all the circumstances, unequivocal evidence of an intention not to satisfy the judgment.

I arrive at the conclusion, therefore, that this bond and mortgage continued valid and subsisting securities, and that the plaintiff's intestate could rightfully collect the amount due thereon.

A majority of the court, however, are of the opinion that $1,200 of the principal of the mortgage was extinguished by the payment of that sum by David Coope, and that it remained thereafter only a valid and subsisting security for the residue of the principal, namely, $3,800. The plaintiffs, therefore, should only have had judgment for that sum and the interest due thereon, and there should be deducted from the judgment the sum of $1,200 and the interest on that sum, which is included therein. Upon that deduction being made, the judgment should be affirmed, with costs ; otherwise, the order granting a new trial should be affirmed, and judgment absolute for the defendants, with costs, in accordance with plaintiff's stipulation.