Oliver Bascom *et al.*, Respondents, *v.* Lewis E. Smith, Appellant.

Merger never takes place, except where the legal and equitable estate unite in the same person; and not even then, when it is the clear intent of all parties in interest that it shall not take place.

Appeal from the judgment of the Supreme Court at General Term affirming the judgment entered up for the plaintiffs on the verdict of a jury at the circuit.

*E. F. Bullard,* for the appellant.

*J. Potter,* for the respondents.

Davies, Ch. J. Joseph Collins and Orange Collins, of the town of Whitehall, in this State, being indebted to the plaintiffs, Oliver Bascom, Thomas T. Vaughn and Henry T. Gaylord, in the sum of $4,500 for their indorsements upon certain notes of said Collins for that amount, on the first day of September, 1857, for the purpose of securing the payment of said debt and saving harmless the plaintiffs on account thereof, made, executed and delivered to them a chattel mortgage upon certain property therein specified. In case of non-payment of said notes by the makers, the plaintiffs were authorized to take possession of the property mortgaged and to sell the same, and out of the avails thereof to pay the said debt, and in case the plaintiffs at any time should deem themselves unsafe, they were authorized to take possession of the mortgaged property and to sell the same at public or private sale.

The mortgage was duly filed, and this action was brought to recover the value of two horses covered by the mortgage, and which were owned by the mortgagors, and subsequently taken and converted by the defendant. The horses were taken on an attachment issued by a justice of the peace against the mortgagors, on the application of one Nelson Shurtz, a creditor of said mortgagors. Judgment was per-

fected on said attachment, and an execution having been issued thereon, the constable who attached the same sold the horses by virtue of said execution, and they were purchased by the defendant in this action, he being the highest bidder therefor at such sale. It appeared on the trial that the plaintiffs had paid the amount of the notes mentioned in the mortgage, and on the 23d of November, 1857, they had demanded of the defendant the possession of said two horses, which he refused.

It further appeared on the trial that on the 19th day of October, 1857, the said Joseph and Orange Collins, in consideration of $10,000, executed a bill of sale of all the property used by them in their business to the said plaintiffs and one Alwyn Martin. And the grantors covenanted to warrant and defend the title to the property so sold, except as against a chattel mortgage held upon said property or a portion thereof, by these plaintiffs, and it was declared that said mortgage was thereby confirmed, and that sale was made in subjection thereto. It also appeared that the personal property included in the bill of sale, and not covered by the mortgage, amounted to from $1,500 to $2,000. Joseph Collins testified that the purchasers agreed to pay the three notes mentioned in the chattel mortgage, and to discharge the mortgagors from liability on said notes. That they were to pay about $11,000 for the whole property sold. The witness further testified that he did not think the whole property covered by the bill of sale, if sold in October, 1857, could have brought over $4,000. The defendant moved for a nonsuit on the following grounds:

1. That by the sale of October 19, 1857, and the agreement to pay the mortgage debt, said debt is to be deemed paid, and the plaintiffs' mortgage extinguished.

2. That by the receipt of the $9,000 worth of property under said agreement, the plaintiffs were bound to pay the notes mentioned in the mortgage, and for the purposes of this action said debt is to be deemed paid and the said mortgage extinguished without reaching the two horses in question.

3. That the plaintiffs having agreed to pay the said debt, and having sufficient for that purpose, are deemed to have paid the debt and are estopped from denying it.

4. That the possession by the plaintiffs under said mortgage and bill of sale of sufficient property to satisfy their mortgage debt, is to be deemed a satisfaction so far as to relieve the two horses in question from said mortgage; which motion was denied, and the defendant's counsel excepted, and the defendant's counsel then requested the court to rule each of said propositions as matter of law, which the court refused, and the defendant's counsel also excepted.

The counsel for the defendant then requested the court to charge the jury:

1. That if they find that before this action was commenced, the plaintiffs had received sufficient property under the purchase of October, 1857, to pay all mortgages and liens thereon, then that said mortgage was satisfied, so far as the two horses in question were concerned, as to the defendant. The court declined so to charge, and the defendant excepted.

Also, that if the jury find that the plaintiffs, at the time of said bill of sale, agreed out of the consideration money, first to pay the debts secured by mortgages, and that they received sufficient property under said purchase for that purpose before the demand of the horses in question, then that the plaintiffs have no right to recover in this action for the two horses in question, which the court also refused, and the defendant excepted.

Also, that the said bill of sale of October 19 was in effect a foreclosure of the plaintiffs' chattel mortgage, and if the jury find that the property received under said bill of sale was sufficient to satisfy the mortgage in question and all expenses, then the said mortgage is to be deemed satisfied or foreclosed or merged, and equity will not revive it for the purpose of collecting the value of these two horses to pay their value over to the creditor who had no lien thereon. The court also refused so to charge, and the defendant excepted.

The plaintiff objected to the introduction of the proof of the proceedings in the justice's court, the judgment and execution and sale of the property in question on various grounds, and the court overruled the objections, and admitted the same, to which the plaintiffs' counsel excepted.

The jury rendered a verdict for the plaintiffs, upon which judgment was entered, and the same was affirmed at the General Term. The defendant now appeals to this court.

The preceding exceptions present all the questions which arise for the consideration of this court:

First. As to the motion for nonsuit: the first ground for this motion was, that by the sale of October 19, 1857, and the agreement made by the purchaser at that sale to pay the mortgage debt, said debt is to be deemed paid, and the plaintiffs' mortgage extinguished. There is no sound foundation for these propositions. If the sale had been made to the plaintiffs solely, and they had been the sole purchasers, then there would have been some plausibility for the argument. But such we have seen was not the fact. The purchase was made by the plaintiffs and another person, and the agreement was made by them in conjunction with that other person, and not by themselves solely. But it is apparent, from the terms of the bill of sale, that it was made subject to the plaintiffs' mortgage, and with the declared intent to confirm the same. The mortgage cannot be regarded as extinguished, or as merged. (*Champney* v. *Coope*, 32 N. Y., 543.) The second request to charge contained an assumption not warranted by the proof, viz., that the property assigned was worth over $9,000. The proof is, from the only witness who speaks of its value, that it could not have been sold for over $4,000 in October, 1857. The judge at the circuit would greatly have erred if he had either decided this as matter of law, or had so charged the jury. The third proposition contains, also, an erroneous assumption in this, that the plaintiffs had agreed to pay the debt secured by the chattel mortgage, and that they had received sufficient for that purpose. The proof was, that the agreement to pay was made by the purchasers named in the bill of sale, and not by the plaintiffs exclusively, and

there was no proof that the plaintiffs had in fact received anything. The fourth and last proposition was equally unsound, and for similar reasons. The plaintiffs had not the possession, under the bill of sale, of sufficient property to satisfy the debt secured by the mortgage. Their possession was jointly with the other purchaser; and no merger of the mortgage could take place by a sale and transfer of the mortgaged property to the mortgagees in conjunction with another. Merger never takes place except where the legal and equitable estate are united in the same person, which was clearly not the case in the present instance. But merger in such a contingency may always be prevented when the intent of the parties to the transaction is clearly shown to have been that it should not take place. (*Champney* v. *Coope, supra.*) Here it was distinctly stated in the bill of sale that it was not only made in subjection to the mortgage, but the mortgage to the plaintiffs was expressly ratified and confirmed. The requests to charge contain the same vice as is found in the grounds for the motion to nonsuit the plaintiffs. As they have been already sufficiently commented upon in the consideration of that motion, it cannot be necessary to recapitulate them.

It is unnecessary to consider the exception of the plaintiffs to the admission of the evidence of the attachment and proceedings thereon, by virtue of which the defendant claimed title to the two horses. If we had arrived at a different conclusion upon the defendant's motion and exceptions than that already stated, then such examination would have been essential, and we should have had to dispose of that question. But as we think that the defendant's exceptions are untenable, it is unimportant to pass upon the plaintiffs' exceptions to the admission of proof of the defendant's title, as clearly he had not any title to the horses at the time the attachment was issued and served, and at the time of the sale; provided, the mortgage to the plaintiffs was valid and a subsisting security. Being clearly of opinion that it was, and that nothing had been shown to impair its validity, the judgment appealed from should be affirmed, with costs.

MORGAN, J. · The only issue in this action was, whether the plaintiffs or defendant owned the property in question at the time of the alleged conversion.   The defendant has set out in his answer the evidence of his title, which was quite unnecessary, for after all the plaintiffs must show a good title or possession before they can recover; and a general denial of property in the plaintiffs was all that was necessary, inasmuch as the defendant had the possession, unless he intended to show that the plaintiffs' title was colorable and fraudulent as against creditors, and then he should have raised that question by his pleadings.   The trial, however, seems to have proceeded upon the theory that such a question was in the case; and the verdict of the jury must be deemed to have disposed of it in favor of the plaintiffs, so that it is not now one of the questions of law to be disposed of by this court.

J. and O. Collins were the original owners of the property, and on the first of September, 1857, mortgaged it, together with other property, to Oliver Bascom, Theodore T. Vaughn and Henry T. Gaylord, to secure their liability as accommodation endorsers of three several notes of the mortgagors payable at the Commercial Bank of Whitehall; one of which became due in three months from August 28, 1857, one in fifty-five days from September 1, 1857, and the other in three months from September 1, 1857.   The mortgage contained a condition that in case of non-payment of said notes, the mortgagees might take possession of the property and dispose of it.   So they were at liberty to take possession, in case they should at any time deem themselves unsafe.

On the 10th of October, before either of the notes became due, a creditor of J. and O. Collins attached the property in question, and subsequently the constable sold the same to the defendant under an execution issued upon a judgment in the attached suit.   On the 19th of October, nine days after the attachment suit, the mortgagors, J. and O. Collins, negotiated a sale of all the mortgaged property to the mortgagees and one Alwyn Martin, and covenanted to defend the title except as against the mortgage in question, " which

mortgage (say they) is hereby confirmed, and this sale is subject thereto."

It appeared upon the trial that the purchasers assumed to pay the notes as part consideration of this sale.

The property was delivered to the purchasers under this sale on the same day, except two horses, the property in question in this suit, and three horses at Fort Edward, which they afterwards obtained by a replevin suit.

It does not appear that the notes were paid when the plaintiff demanded the property in question of the defendant on the 23d day of November, 1857; nor is there any evidence that the mortgage was satisfied, unless it was extinguished by virtue of the sale of the property to the mortgagee and Alwyn Martin, for a sum sufficient to pay the notes, exclusive of the property in question.

There is no objection made that Alwyn Martin is not a party plaintiff in this action, although it is very evident that he was a part owner of the property when the demand was made.

The rights of the parties may, I think, be determined without reference to the objection taken to the attachment proceedings.

Assuming that the attachment was regular and the judgment conclusive as against the plaintiffs in this action, the defendant only obtained the mortgagor's title to the property in question, which was reduced to a mere equity of redemption, after forfeiture of the mortgage. If there had been no subsequent arrangement between the mortgagors and mortgagees, the title would have vested absolutely in the mortgagees on the failure of the mortgagor to pay the notes. It will be seen that one of the notes became due before the plaintiffs demanded the property, and this fact, I think, was sufficient to divest the mortgagors of their legal title, as well as those claiming title through them subsequent to the mortgage.

This result, I think, follows in the absence of fraud, which, as I have already observed, must be deemed to be out of the case

The effect of the agreement made between the mortgagors and mortgagees on the 19th of October, is one of some novelty, though I think not of much difficulty.

The property in question consisted of two horses, of the value of one hundred dollars, as found by the verdict of the jury. The liability of the mortgagees did not exceed five thousand dollars, while it appears that the mortgaged property, if its value is estimated by the price which the purchasers agreed to pay for it, would exceed that sum by several thousand dollars.

It may, therefore, be assumed that the property mortgaged was worth a great deal more than was necessary to secure the mortgagees for their indorsements.

But in the absence of the agreement of the 19th of October, the mortgagees would be entitled, after forfeiture, to take all the property that is claimed by the defendant as well as the rest; and it would be no answer to say that there was other property sufficient to discharge the debt without taking the two houses in question. The mortgagees are entitled to it even without a foreclosure; but if they neglect to sell under the power of sale contained in the mortgage, they may be treated as purchasers of the property, and be made to account for the same at its fair value to the mortgagor or his assignees; or the mortgagor and those claiming under him subsequent to the mortgage, may redeem the property by payment of the mortgage debt. In case of a redemption, however, they cannot, I think, redeem in parcels.

Now what is there in the agreement of the 19th of October which changes the rights of the parties? If the obligation of the mortgagors was satisfied as to the mortgagees, it was satisfied by a sale to them of the very property in question. The sale was in bulk, and the title to the two horses passed to the purchasers as well as the title to the balance of the property. The purchasers never agreed to take a part of the property at any particular price and satisfy the mortgage.

But, in fact, the mortgagors had nothing to sell except their equity of redemption. That was, however, a sufficient

consideration to support a contract by which the mortgagees undertook to allow them a certain price for the property, out of which they were to pay the mortgagors' notes. This, doubtless, left a large surplus in their hands for other creditors; and those having a lien upon the property prior to the sale, are, perhaps, entitled to be paid out of this surplus to the extent of their liens, until it is exhausted.

Now it may be admitted that the parties to the mortgage could not by any agreement cut off the defendant's equity of redemption, nor did the agreement in question undertake to cut it off. If he does not, however, desire to redeem, let him make his claim upon the surplus. That arrangement was for his benefit if he elects to take advantage of it; but if he takes the benefit of it, he cannot, at the same time, repudiate it.

The mortgage itself was a conditional sale of all the property anterior and superior to all subsequent liens or claims upon the title. It is absurd to contend that such a sale is defeated by a subsequent agreement, which releases the equity of redemption to the mortgagors, and fixes the gross sum which the mortgagees are to allow for the property, without the formality of a foreclosure sale. While such an agreement does not impair the right of junior creditors, having a lien upon the property, to redeem it, neither does it operate to divest the legal title of the mortgagees. Let us suppose that the parties had stipulated in the mortgage itself that the mortgagees should allow a gross sum for the mortgage property in case of forfeiture, under what rule of law, in the absence of fraud, could an execution creditor seize upon a parcel of it and hold on to it after forfeiture, merely because he was able to show that the balance was worth enough to satisfy the mortgage debt? Such a claim would not differ in principle from a claim to hold on to a parcel of the mortgaged property after forfeiture, where there was no such stipulation in the mortgage, although it would, perhaps, be as easy to show in the one case as in the other, that the balance of the property was worth enough to pay the mortgage debt.

There is nothing in the doctrine of *merger* which can be invoked to discharge the property from the lien of the mortgage. The mortgagees are considered as holding the legal title after forfeiture, and the effect of the merger would be to unite to the prior mortgage the equity of redemption, without prejudice, however, to the equitable claim of the defendant to redeem.

Such is the effect *upon the title* of a mortgagee of real estate, who purchases in an equity of redemption (*Jones* v. *Mooney*, 2 Cow., 246), and I do not perceive any difference in principle between that case and this.

It is, perhaps, of no importance in this case, if it should be conceded that the mortgage debt was extinguished by the agreement of October 19, 1857. So it would be extinguished if the mortgagee had taken the property without any agreement as to the price. In both cases the mortgage is extinguished as a security, but is executed as a sale of the property as between the parties to it and those claiming under them.

The judgment should be affirmed.

All the judges concurring,

Judgment affirmed.