KARL M. WALLACH, Respondent, *v.* CHARLES J. SCHULZE, Appellant, Impleaded with Others.

*Merger — mortgagor paying the mortgage debt and procuring the mortgage to be assigned to a third party — rights of a* bona fide *purchaser from the latter.*

Where a mortgagor pays the amount of the mortgage to the mortgagee, and procures an assignment of the mortgage to be executed to a third party, with the intention of keeping the mortgage alive, and of not satisfying it or permitting it to merge, such third person can convey a good title thereto, as against a judgment creditor of the mortgagor, to a person who, after obtaining from the mortgagor and the assignee of the mortgage certificates stating that the mortgage (which was unsatisfied of record) was a valid and subsisting lien for

its full amount, to which there were no defenses, and obtaining possession of the bond and mortgage to which the assignee has the complete record title, takes in good faith an assignment of the mortgage.

APPEAL by the defendant, Charles J. Schulze, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 30th day of June, 1896, upon the decision of the court rendered after a trial at the New York Special Term.

This action was brought to foreclose a mortgage for $8,500 on premises in the city of New York. From the evidence it appears that on December 30, 1885, the defendant Wilhelmine Juch executed the mortgage in suit to certain trustees of an estate. In 1888 deficiency judgments upon foreclosure and sale of other property were had against the defendant Mrs. Juch, which were held by the defendant Cauldwell. On May 18, 1892, Mrs. Juch, in the presence of her nephew, Louis F. Zimmerman, paid to the trustees holding the mortgage the amount thereof, $8,500, but instead of receiving a satisfaction piece, she caused an assignment of the mortgage to be executed by the said trustees to Zimmerman. On October 2, 1894, Zimmerman assigned the mortgage to the plaintiff for value, after the plaintiff's lawyer had searched the title and found no liens against the property up to the date of the mortgage, and upon receiving from Mrs. Juch a written declaration, witnessed by her attorney, that the mortgage had not been paid, that there were no defenses, offsets or counterclaims to it, and that, except for unpaid taxes and assessments, it was a first lien upon the premises. The assignment contained a similar certificate from Zimmerman.

This action was commenced on October 11, 1894. The defendant Cauldwell having, on October 9, 1895, assigned his judgments against Mrs. Juch to Charles J. Schulze, the latter was substituted as party defendant and answered, demanding judgment, amongst other things, that the bond and mortgage in suit be decreed to have been paid, canceled and discharged of record, and that the judgments held by him be adjudged prior liens upon the premises. The learned trial judge held that the plaintiff, as a *bona fide* holder of the bond and mortgage for value, without notice of any defect or intervening equity, was entitled to a judgment of foreclosure and sale, and from the judgment accordingly entered the defendant Schulze appeals.

*Stillman F. Kneeland,* for the appellant.

*David Gerber,* for the respondent.

O'BRIEN, J. :

There was evidence sufficient to justify the finding that the plaintiff was a purchaser of the mortgage for value, without notice of any defect in the title, or of the defense of payment advanced by the defendant Schulze at the trial. It is insisted, however, that there is none to support the conclusion of law "that the said Zimmerman became a holder for full value of said bond and mortgage." This criticism would be well founded if Zimmerman were a credible witness, because, upon the subject of payment to the trustees at the time he acquired the assignment, he testified that, although he was present, the money advanced therefor was not his, but Mrs. Juch's. It was within the province of the trial judge to conclude that the certificate and the sworn statement of Zimmerman given at the time were true, and that his subsequent testimony while on the stand was untrustworthy and untrue. So regarded, there was justification for the conclusion now so vehemently assailed as entirely without foundation. If, however, we examine the subject from the appellant's standpoint, that the evidence preponderates in favor of the conclusion that the money was Mrs. Juch's and not Zimmerman's, we think the plaintiff's title is equally unassailable. At the time of the purchase, the mortgage was unsatisfied of record, and the assignment to Zimmerman recorded, and it is evident, from the manner in which the transaction was carried out, that it was the intention of the parties, at the time of such assignment to Zimmerman, to keep the mortgage alive.

It is undoubtedly true that, if a mortgage be paid, it cannot be reinstated to the injury of creditors, for vitality cannot be breathed into an incumbrance which is once paid or dead. Considering, however, the intention of the parties to assign the mortgage to Zimmerman, and not to satisfy it or permit it to merge, there is no legal objection against such an intention being effectuated and keeping the mortgage alive, in the way it was here done, by an assignment to a third party. In *Pruyne* v. *Adams Furniture & Manufacturing Co.* (92 Hun, 214) the defendant corporation issued bonds secured by a mortgage. Subsequently the bonds were surrendered

and the holders thereof took stock therefor. When they were surrendered, it was expressly agreed that the bonds should be resold for the benefit of the company. Certain judgment creditors of the corporation claimed that the bonds were paid when they were surrendered by the bondholders, but the General Term held : " If these bonds had been surrendered for the purpose and with an intent to discharge the debt secured thereby, it would, perhaps, follow that the mortgage would be invalid as to the appellants' judgments, but manifestly that was not the intent. The bonds were surrendered for the purpose, and under an express agreement or understanding, that they were not to be canceled, but were to be resold to raise money to conduct the business of the company. Under these circumstances, there was no merger, as, clearly, such was not the intention of the parties. * * * Indeed, there does not seem to be any question of merger involved in this case. The question is whether the surrender of the bonds, in pursuance of the agreement between the holders and the corporation, operated as a payment and consequent discharge of the mortgage given to secure them. As a general rule, the payment of a debt secured by a mortgage will extinguish the mortgage. But the intent of the parties will govern, and the mortgage will not be extinguished by the payment if it was the intention to still keep it alive." And in *Champney* v. *Coope* (32 N. Y. 543), where the fact appeared that the money due on the mortgage was paid by the mortgagor, who took back an assignment in blank, which he subsequently caused to be filled in with the name of the plaintiff's intestate, and then delivered the bond and mortgage and assignment to the assignee, it was held that equity would preserve the mortgage according to the intention of the parties and the just requirements of the case; that the payment by the creditor and the taking of the assignment in blank did not necessarily extinguish the mortgage, where the intent of the parties thereto was that the mortgage should be kept alive, and where the equitable rights of innocent parties required that it should be. (See, also, *Kellogg* v. *Ames*, 41 N. Y. 259; *Coles* v. *Appleby*, 87 id. 114; and *Bogert* v. *Bliss*, 148 id. 194.) In the latter case the court said (p. 198): " In this State a mortgage is a lien simply, and the general principle is well settled that on payment the lien is *ipso facto* discharged and the mortgage extinguished. There are many cases where, for purposes connected

with the protection of the title or the enforcement of equities, what is in form a payment of a mortgage will be treated as a purchase, so as to preserve rights which might be jeoparded if the transaction was treated as a payment.   *   *   *   We find no case which sustains the claim that a mortgage paid by the mortgagor, not intended to be kept alive at the time of the payment, can be thereafter reissued by him to secure another loan made by a party cognizant of the fact, so as to give it validity as against a subsequent purchaser or mortgagee." Although in that case it was held that the mortgage was discharged, it will be noticed that the fact is expressly recognized that where it is the intention of the parties that money advanced by the mortgagor shall not discharge the mortgage, and the rights of innocent third parties intervene, the intention of the parties will be carried out. And the very distinction which is therein drawn by the court we find present upon the facts in the case before us, namely, an intention not to discharge the mortgage, evidenced by the assignment to a third party, and the *bona fides* of the purchase by the plaintiff, without knowledge of any alleged payment of the mortgage.

In *Moore* v. *Metropolitan Nat. Bank* (55 N. Y. 41) the court say : " Why should the owner of a horse or of bank shares, who has given to another an absolute written transfer of all his rights thereto, for some purpose other than that of passing the title, be precluded, as against a *bona fide* purchaser from such person, from asserting his title, while under the same state of facts he may reclaim from such purchaser a bond and mortgage, or a certificate of indebtedness like the one in question ? As to the former he is estopped, while as to the latter, the same state of facts, it is insisted, will work no such result." And in *Curtis* v. *Moore* (152 N. Y. 159) the court held that there is no merger of the mortgage unless there is an intention on the part of those concerned in the transaction that it should operate as a merger. So, also, in *Sturges* v. *Hart* (84 Hun, 409), where the mortgagor paid the mortgage and took an assignment to himself, instead of a satisfaction piece, which was prepared and which he at one time contemplated taking, it was held that his intention not to extinguish the mortgage was manifest, and that the mortgage was enforcible in the hands of a *bona fide* holder.

As was said in *Pruyne* v. *Adams Furniture Co. (supra)*, we do

not think that here there is any question of merger involved. The question is, really, assuming the money to have been advanced by Mrs. Juch, without any intention of paying the mortgage, but with just the opposite intention of keeping it alive, and to that end having the assignment made to Zimmerman, whether, notwithstanding such expressed intention of the parties, the transaction operated as a payment and a consequent discharge of the mortgage. We think, upon all the authorities, that no such conclusion can be reached. We are of course familiar with the rule in this State, which has been well stated in the American and English Encyclopædia of Law (Vol. 15, 861), that "the purchaser of a chose in action must always abide the case of the person from whom he buys; the true test is to enquire what can the mortgagee do by way of enforcement of it against the property mortgaged; what he can do the assignee can do, and no more. The reason of the rule is, that the holder of a chose in action cannot alienate anything but the beneficial interest which he possesses. It is a question of power or capacity to transfer to another, and that capacity is to be exactly measured by the rights of the assignor. In that State, therefore, it is well settled that the assignee of a mortgage is no less bound by equities existing between the mortgagee and third persons than by those existing against the mortgagee in favor of the mortgagor." There is nothing, however, in the cases to which we have referred, nor in the conclusion arrived at in favor of the validity of the plaintiff's title, which is in any way in conflict with the rule thus expressed, because, while it is true that the assignee of a chose in action acquires by assignment only the right of his assignor, we think, upon the facts appearing, that, as it was not the intention, there was no payment of the mortgage debt; that by the assignment to Zimmerman the title was legally and validly transferred to him; and he was, therefore, in a position to confer upon an innocent purchaser, for value and without notice of any defect, a good title to the bond and mortgage.

There are cases, and without them there would be reason and equity, in favor of an attack by a creditor, if directly made against a mortgagor, or the person to whom a mortgage had been assigned, such assignment having been procured with the money of the mortgagor; but that would be upon the theory, not that the person taking the assignment obtained an invalid title, but that the title which,

upon the record was legal and valid, was open to attack and void-able as against creditors. The title which Zimmerman obtained to the bond and mortgage by the assignment cannot be regarded as void. The most that can be asserted of it is that it was voidable or assailable at the instance of creditors. Having a good title, there-fore, Zimmerman, before such attack was made, assigned it to the plaintiff. As evidence of the plaintiff's good faith, he not only obtained the certificates from both Mrs. Juch and Zimmerman that the mortgage was a valid subsisting lien upon the premises, that there were no defenses, and that the full amount called for in the mort-gage was unpaid, but he also obtained possession of the bond and mortgage, which was enforced by a complete record title in Zim-merman at the time of purchase. The equities of such a purchaser as the plaintiff, we think, are superior to those of a creditor who takes no action until a period subsequent to the purchase; and the right of such creditor to attack the title to the bond and mortgage while in Zimmerman's hands is not available against one who pur-chased as did this plaintiff.

It would be destructive of all certainty in dealing with mortgages, if a purchaser for value without notice of any defect, from one who has a complete record title, is liable to have his title assailed by a creditor of the mortgagor, upon the principle of some latent equity in favor of the creditor. A purchaser of a mortgage can do no more than examine the records and make inquiry of the mortgagor, and take his or her certificate, and that of the holder of the record title, as to the validity of the mortgage. If the person from whom he takes has a good title, even though it may be open to equities in favor of a creditor, such purchaser has an equity which we deem superior to that of the creditor.

Our conclusion, therefore, is that the judgment below was right, and should be affirmed, with costs.

VAN BRUNT, P. J., WILLIAMS, PATTERSON and INGRAHAM, JJ., concurred.

Judgment affirmed, with costs.