(22 Misc. Rep. 285.)

### GEARON v. KEARNEY et al.

### SQUIRE v. SAME.

(Supreme Court, Special Term, Kings County. January, 1898.)

1. FRAUD OF AGENT—ASSIGNMENT OF MORTGAGE—RIGHTS OF ASSIGNEE.

Where an agent, being authorized to pay off a mortgage on his principal's land, fraudulently takes an assignment thereof to himself, an assignment by him of the mortgage to a bona fide purchaser for value will vest in the latter a good title thereto, and the principal will be estopped to deny the agent's title.

2. MORTGAGES—PRIORITIES—ASSIGNMENT.

Where the owner of a first and second mortgage sold the former to a bona fide purchaser for value, the latter's title is not affected by the fact that the assignor had previously sold the second mortgage with a representation that it was a first lien.

3. SAME—NOTICE.

The expression of a nominal consideration in a mortgage assignment will not charge a purchaser from the assignee with knowledge that the latter had previously sold a subsequent mortgage representing it as a first lien.

4. SAME.

A purchaser of a mortgage, knowing of the existence of a subsequent mortgage, is not thereby charged with knowledge that the latter was sold on the representation that it was a first lien.

Action by Artilissa V. Gearon against James Kearney and others, and by Pauline W. Squire against the same parties, for the foreclosure of two mortgages. The actions were consolidated, and judgment rendered for plaintiff in each action.

M. Gearon (J. A. McCreery, of counsel), for plaintiff Gearon.

Rush Taggart, for plaintiff Squire.

Miller, Decker & Miller (Jacob F. Miller, of counsel), for defendants Maria S. Dunkin and Ella V. Greene.

HIRSCHBERG, J. Convenience will be subserved by the disposition of these cases together. Each is brought to foreclose a mortgage upon the same premises, and in each a defense is interposed by the defendants Dunkin and Greene, asserting the prior equity of the same subsequently recorded mortgage. The real estate affected by the three mortgages in question was conveyed to the defendant James Kearney on the 15th of September, 1891, subject to two of the mortgages, viz.: One for $1,800, given to George H. Roberts, January 9, 1884, and one for $1,200, given to Jane J. Davenport, April 24, 1889. At the time of the conveyance to Kearney these mortgagees were still the owners of the mortgages, respectively. The conveyance to Kearney was without consideration, and was effected through an intermediary from the real owner, McCann, and for reasons not disclosed. The papers were drawn by an attorney, William H. Nafis, and at the time of the transaction it was understood that he would secure a new loan on the property of $3,000, and with the proceeds would take up the two mortgages above mentioned. Such a loan was procured by him at that time from one Maria N. Anderson, and a purchase-money mortgage for $3,000 was executed September 15, 1891, by Kearney to her. The money was paid

by Mrs. Anderson to Nafis, and on the 3d of October following Nafis paid to Roberts the amount of his mortgage, viz. $1,800, and took from him an assignment of it to Mrs. Anderson, expressing the consideration of one dollar. This assignment was recorded November 13, 1891. Mrs. Anderson knew nothing of the assignment to her of the Roberts mortgage. She, in common with the other parties, trusted Nafis implicitly, and he was accordingly enabled to manipulate the securities as he pleased. On April 12, 1893, Nafis paid Mrs. Anderson the full amount of her mortgage, and took from her an assignment to. himself, both of the Roberts $1,800 mortgage and her own $3,000 mortgage. The assignment of the Roberts mortgage was for the expressed consideration of one dollar, and she says she signed it because Nafis asked her to do so, and without any understanding or knowledge of what it was. On the 20th of April, 1893, Nafis sold and assigned to the defendants Maria S. Dunkin and Ella V. Greene the $3,000 mortgage for its full face value, assuring them that it was a first lien on the property. The assignments of this mortgage to Nafis and to said defendants were recorded the next day. On January 12, 1894, Nafis paid to Mrs. Davenport the full amount of her mortgage, $1,200, and took from her an assignment of it to himself dated that day, and expressing a consideration of one dollar. At that time, therefore, Nafis held unrecorded assignments of both the mortgages which were prior of record to that held by the defendants Dunkin and Greene. On July 3, 1895, Nafis sold the Roberts mortgage to the plaintiff Pauline W. Squire for $1,800, and transferred it by an assignment to her dated that day, and which assignment, together with the assignment of that mortgage to Nafis, was recorded July 16, 1895. On September 25, 1895, Nafis sold the Davenport mortgage to the plaintiff Artilissa V. Gearon as a $1,000 mortgage, and for that sum. Her husband and attorney, before consummating the purchase, searched the records, and also required and received from Kearney a verified certificate to the effect that the mortgage was a valid and subsisting lien as a second mortgage upon the premises, and that there was no legal or equitable defense to it. Nafis died in the month of October, 1896. On December 22, 1896, the assignments to him and to Mrs. Gearon of the Davenport mortgage were recorded.

The defendants insist that both the prior mortgages were paid in fact by Nafis, and that they were, therefore, dead at the time they were transferred to the plaintiffs, respectively; and that, if they be considered as then legally revived by Nafis, neither could be negotiated to the injury of the holders of the third mortgage. This contention is based on the assumption that the money used by Nafis in paying Roberts and Mrs. Davenport was money belonging to Kearney, and that the intention of the parties was that these prior mortgages should be paid off and canceled. Assuming that the money used was Kearney's, I think a purchaser in good faith for value would be protected in dealing with Nafis as the owner. The intention is to be gathered from the acts of the parties. It was certainly the act of the legal owner of the property which enabled Nafis to procure the possession of the mortgages, and to invest himself with the indicia of ownership, and, as between himself and a purchaser for value, he would be estopped from disputing the

validity of the title acquired by Nafis. As has been seen, he did not hesitate to certify under oath that one of the mortgages was a valid incumbrance, and subject to the other one, four years after the money was borrowed which it is claimed was used in paying them off. But, even assuming that the intention was to pay off and discharge the prior mortgages, then the act of Nafis in procuring an assignment to himself was fraudulent, but that fact would not prevent him from giving a good title to a bona fide purchaser for value. As was said in Simpson v. Del Hoyo, 94 N. Y. 194, "It is a familiar rule of law that a fraudulent purchaser of real and personal property obtains the legal title to the property purchased, and that he may convey a good title to any bona fide purchaser from him for value." In that case it was accordingly held that the holder of a bond and mortgage concededly worthless and uncollectible in his hands could transfer it, and the purchaser for value, without knowledge or notice of the defect, could collect the security by foreclosure. See, also, the recent case of Wallach v. Schulze, 22 App. Div. 57, 47 N. Y. Supp. 936, where it was held that a purchaser of a bond and mortgage from one who has procured an assignment by using the money of the mortgagor for that purpose has a superior equity to that of a judgment creditor whose lien precedes the sale. The court said, page 62, 22 App. Div., and page 939, 47 N. Y. Supp.:

"There are cases, and without them there would be reason and equity, in favor of an attack by a creditor, if directly made against a mortgagor, or the person to whom a mortgage had been assigned, such assignment having been procured with the money of the mortgagor; but that would be upon the theory, not that the person taking the assignment obtained an invalid title, but that the title which, upon the record, was legal and valid, was open to attack and voidable as against creditors. The title which Zimmerman obtained to the bond and mortgage by the assignment cannot be regarded as void. The most that can be asserted of it is that it was voidable or assailable at the instance of creditors. Having a good title, therefore, Zimmerman, before such attack was made, assigned it to the plaintiff. As evidence of the plaintiff's good faith, he not only obtained the certificates from both Mrs. Juch and Zimmerman that the mortgage was a valid subsisting lien upon the premises, that there were no defenses, and that the full amount called for in the mortgage was unpaid, but he also obtained possession of the bond and mortgage, which was enforced by a complete record title in Zimmerman at the time of purchase. The equities of such a purchaser as the plaintiff, we think, are superior to those of a creditor who takes no action until a period subsequent to the purchase; and the right of such creditor to attack the title to the bond and mortgage while in Zimmerman's hands is not available against one who purchased as did the plaintiff."

The defendants, however, further contend that they have a direct equity as against the plaintiffs' mortgages, inasmuch as Nafis assured them when they invested that their mortgage was a first lien; that he was thereby estopped from asserting the two prior mortgages as prior liens, even if his title to them were unassailable; that his assignees could take no better title than he could convey; and that accordingly the plaintiffs acquired their mortgages subject to this equity of the defendants. It must be conceded that it is the settled law of this state that the bona fide purchaser for value of a nonnegotiable chose in action, such as a mortgage, takes it after

maturity subject to all the equities, patent or latent, existing either against the mortgagor or in favor of third persons; but it is by no means settled that such equities are other than those which exist at the time, and are in some manner connected with the chose in action itself, when it was first endowed with legal life. I have found no satisfactory case, in which the principle was applicable to the facts, where the court has decided that the equities with which an innocent assignee was chargeable could be incidentally created in the course of remote transmission of the security, still less that they could arise with respect to a subsequent incumbrance and the facts attendant upon its remote sale and transfer. When it is recalled that such choses in action were not assignable at common law, and that even after the rights of assignees were recognized by courts of equity the action was always in the name of the assignor, —that is, the mortgagee,—the significance of the test that the assignee could do only what the mortgagee could do will be appreciated. If the doctrine above referred to, and peculiar to this state, is to be now extended so as to charge purchasers of mortgage securities with the latent equities of subsequent incumbrancers, such equities having been created after the inception of the prior incumbrance, the extension should rest upon the clearest and most certain judicial authority.

The leading case relied upon by the defendants is, of course, Bush v. Lathrop, 22 N. Y. 545; but, while the general principles asserted in that case have been frequently indorsed, they were notoriously inapplicable to the facts before the court, which called for a decision on the doctrine of estoppel, and not because of the assignee's subjection to latent equities.

In Schafer v. Reilly, 50 N. Y. 61, the mortgage was given originally without consideration, and, before it was negotiated for value, a new lien had been created upon the property. It was held that the purchaser was bound by the equity existing at the inception of the mortgage, and arising from the original failure of consideration. In other words, when he bought the mortgage it first became one.

In Trustees v. Wheeler, 61 N. Y. 88, the question related to the rights of a person having a contract interest in the equity of redemption prior to the making of the mortgage, and it was held that an assignee of the bond and mortgage in good faith and without notice acquired only a lien subordinate to the rights of the purchaser. "It is well settled," said Dwight, C., page 104, "that an assignee of a mortgage must take it subject to the equities attending the original transaction. If the mortgagee cannot himself enforce it, the assignee has no greater rights. The true test is to inquire, what can the mortgagee do by way of enforcement of it against the property mortgaged? What he can do, the assignee can do, and no more." And on the motion for reargument he said (page 114): "It must accordingly be held to be still the law of this state that the purchaser of a nonnegotiable chose in action, secured by a mortgage, takes it subject to the latent equities, not only of the mortgagor, but of third persons." The expression "third persons" must be qualified, as was done in discussing another principle at

page 122, by not extending it to "third persons in the correct sense of that expression; that is, to persons whose rights are external to the mortgage;" and thereby limiting the rule as laid down on page 114, viz.: "That the chose in action itself is open to all defenses growing out of the original transaction, in the hands of any assignee, no matter how remote."

In Greene v. Warnick, 64 N. Y. 220, the equity related to an agreement made at the time of the execution of two mortgages that neither should have priority over the other, and it was held that the assignee of the one first recorded obtained no preference.

In Crane v. Turner, 67 N. Y. 437, the equity existed at the creation of the mortgage, and Miller, J., speaking for the unanimous court, said (page 439):

"The principle is settled beyond peradventure that an assignee of a mortgage must take it subject to the equities attending the original transaction. If the mortgagee himself cannot enforce it, then the assignee has no greater rights. The true test is to inquire what can the mortgagee do by way of enforcement of it against the property mortgaged, and what he can do the assignee can do, and no more."

In Viele v. Judson, 82 N. Y. 32, the question related to the effect of an unwarranted and fraudulent discharge of a mortgage, and it was held not to create a priority in a mortgage subsequently recorded.

In Owen v. Evans, 134 N. Y. 514, 31 N. E. 999, the rule is indeed declared to be much broader than these authorities justify, and is stated by Vann, J., as follows, page 519, 134 N. Y., and page 31, N. E.:

"According to the rule, well settled in this state, however it may be elsewhere, the plaintiff, as assignee of the note and mortgage, when both were past due, took those securities subject to all the equities which third persons could enforce against his assignor. Our courts recognize no distinction between equities existing in favor of the mortgagor and those existing in favor of a third person, but hold that, in the absence of an estoppel, an assignee of a mortgage takes only the interest of his assignor, and subject to any latent equity in favor of any person. Bush v. Lathrop, 22 N. Y. 535; Schafer v. Reilly, 50 N. Y. 61; Trustees v. Wheeler, 61 N. Y. 88; Greene v. Warnick, 64 N. Y. 220."

It is to be noted, however, that the only question before the court was the determination of the true ownership of the same securities as between rival claimants, and the principle involved in the decision was that the owner, having once sold the securities, could not sell them a second time. It was not that the second assignee took subject to certain equities, but that he took nothing.

In Bank v. Frank, 56 How. Prac. 403, the precise question arose. There an agreement in writing was made and recorded, by which the holder of a mortgage agreed to waive its priority over another, and it was held that an assignee without notice was not bound by the agreement. The case differed from Greene v. Warnick, supra, in that the agreement was made after the mortgages were negotiated. The court said, referring to the general rule that an assignee of a mortgage takes it subject to the equities (page 408):

"But this general rule does not extend to equities other than such as attend the original transaction. They must exist at the time of the inception of

the mortgage; at the time it springs into life. In all such cases the assignee takes subject to them, and he cannot defeat them simply by showing that he is a bona fide purchaser for a valuable consideration. In all such cases it is immaterial that he had no notice of their existence at the time of assignment. But where a mortgage had a valid inception as a subsisting and enforceable lien in the hands of the mortgagee to the full extent of its face, equities arising thereafter stand upon a different footing, and they are to be disposed of upon such other principles of public policy, or according to such statutory requirements, as the facts of the particular case may call for."

My conclusion, therefore, is that the plaintiffs, if bona fide purchasers, did not take subject to the defendants' equity arising from what Nafis said to the latter at the time of the sale of the $3,000 mortgage. If the action were against Nafis, the doctrine of estoppel would apply. If Kearney, the owner, had done with these mortgages just what Nafis did, that doctrine might be successfully invoked. But where the record owner of a first and second mortgage parts with the first mortgage to a bona fide purchaser for value, the title of such purchaser is not affected by the fact that the assignor had previously sold the second mortgage accompanied by a representation that it was a first lien.

There remains to be considered the question of good faith. The defendants insist that the consideration of one dollar only in the assignment to Nafis is a circumstance tending to put the plaintiffs on inquiry, and that they are chargeable with the consequences of a failure to inquire. Assuming this to be so, it is difficult to see how inquiry would have disclosed the existence of the defendants' claim to priority. The only suspicious circumstance being the nominal consideration, suspicion would have been instantly allayed in Mrs. Gearon's case by inquiry. Mrs. Davenport or her representative would have told her that, although the assignment to Nafis was expressed as for one dollar, yet Nafis in fact paid her the full amount of the bond and mortgage. In Mrs. Squire's case the answer is not so satisfactory. Inquiry of Mrs. Anderson would have presumably disclosed the existence of the defendants' mortgage, and the fact that Mrs. Anderson had no knowledge of the transmission of the first mortgage through her. But further inquiry of Mr. Roberts would have shown that Nafis at the time of the assignment to Mrs. Anderson paid the full amount of that bond and mortgage. The existence of a third mortgage is not of itself a fact which would deter an individual from purchasing a first one, and it would be the merest speculation to say that the investigation would naturally or necessarily have acquainted Mrs. Squire with the claim of priority herein asserted by the defendants.

These cases cannot be decided without probably entailing a serious loss on one or more of the parties. To visit this loss upon the plaintiffs would be in a large degree destructive of certainty in dealing with mortgages. A result which enforces the mortgages in the order of their record seems, under the circumstances, the most equitable disposition of the cases, and judgments are accordingly so ordered, but without costs.

Judgments accordingly, without costs.