ABNER REEVES, Appellant, *v.* DANIEL S. KIMBALL, Respondent.

A contract for the sale of lands, even when accompanied by possession by the vendee, does not carry with it such an obligation that the vendor will convey according to its terms, as that assignees thereof can compel the vendor to convey, notwithstanding he has a defence as against the vendee to the claim for such a conveyance.

The assignee of a contract for the sale of land takes it subject to the equities existing between the original parties.

K. contracted to sell to F. certain real estate, and F. went into possession. Soon afterwards, by a second written agreement between them, it was stipulated that K. should hold the title to the premises for the security of the amount payable under the contract, "and such other sums as K. should let F. have for his note, or become holden for by indorsement or otherwise for him." Subsequently K. did make further advances to F. on his note. Afterwards F. assigned the contract and transferred the possession of the lot to R., a purchaser without notice of K.'s additional lien for advances. In an action by R. to compel K. to convey—*Held*, that

the latter was entitled to insist upon payment of the advances under the second agreement, as well as the amount due by the terms of the contract itself, as a condition of his conveyance.

In such a case the receipt by the vendor from the assignee, subsequent to the assignment, of interest upon the amount due upon the original contract, without disclosing his additional lien, creates no estoppel as to that against him.

(Submitted on the 16th of January, 1869, and decided March 22d, 1869.)

THIS is an appeal by the plaintiff from a judgment of the General Term in the fifth judicial district, affirming judgment in favor of the defendant, upon the report of a referee.

The action was for specific performance of a contract to convey a lot of land in Brownville, Jefferson county; and the dispute was as to the amount the defendant was entitled to demand as a condition of his giving the deed.

The facts are fully and particularly stated in the opinion of the court.

*F. W. Hubbard*, for the appellant.

*Bagley & Wright*, for the respondent.

LOTT, J. This was an action to enforce the specific performance of a contract, bearing date the 2d day of March, 1857, for the sale of a piece of land, agreed to be sold by the defendant to Chester Folsom, and by him assigned to the plaintiff.

The issues therein were tried by a referee, and his conclusions, both of fact and law, have been affirmed by the General Term of the Supreme Court in the fifth district. We must, therefore, on the appeal from its judgment to this court, assume his finding of fact to be correct. From those as stated in the case, and the admissions in the pleadings, it appears:

1st. That by the terms of the contract the said Chester Folsom agreed to pay to the defendant, at the expiration of three years from its date, the sum of $600, and the

interest thereon half-yearly in the meantime, together with
the ordinary cost of executing a deed for the premises in
question; and the defendant on his part agreed, on the said
payments being punctually made to him, "to convey in fee
simple, by a good warranty deed," the said premises to the
said Folsom or his assigns. It appeared that Folsom had
originally a contract for the conveyance of the premises from
one Knowlton, and was in possession; but, failing to pay
according to its terms, had applied to the defendant to pay up
the contract, take a deed from Knowlton, and give him, F.,
a contract. This was done, and the contract was given as
above stated, on the 2d day of March, 1857. On the 12th
day of the same month of March, the defendant executed a
declaration in writing of that date, upon his deed from
Knowlton of the said premises, to the effect that it had been
given by Joseph Knowlton, the grantor, to him, instead of
Folsom, to secure the payment of the said sum of $600, and
interest, to him on said contract, and such other sums as he
might "subsequently let him (Folsom) have for his note, or
become holden for, by indorsement or otherwise, for him;"
and then, further stating, "now therefore, be it known to my
executors, administrators or assigns, in case I should suddenly
be incapacitated for doing business, for what purpose the
within deed is given to me, that strict and impartial justice
may be done to all concerned, viz., the above named Chester
Folsom and myself;" and adding at the foot of said declara-
tion, after being signed, the following statement, also signed
by him: "P. S. The within deed, instead of being given
from Knowlton to Folsom, and from Folsom to me, is given
from Knowlton direct to me, to save making out unnecessary
deeds, and recording;" and the plaintiff, at the same time,
signed below this declaration and statement a certificate,
bearing even date therewith, in these words: "I hereby
certify that the foregoing statement of D. S. Kimball (above),
is perfectly just and true, and acknowledge myself, my heirs,
executors, administrators and assigns equally indebted and
obligated to pay the same before the delivery of a deed for

the within premises, for any such additional sums, so advanced to me, as if originally incorporated in said contract."

2d. That on the 1st day of March, 1859, the defendant and Folsom had a settlement, under which Folsom gave the defendant two promissory notes, signed by himself and one Monroe Knowlton, jointly and severally: "One for $100, and the other for $101.75, the consideration of which was as follows: eighty-four dollars for two years back interest on the contract; fifty dollars cash lent at that time" (and which was the only money advanced by Kimball to Folsom after the 20th day of March, 1857); "note of twenty dollars or twenty-five dollars then held by Kimball against Folsom, and the balance book account;" and Kimball at the same time extended the contract one year in writing on the back thereof.

3d. That on the 21st day of April, 1859, Folsom sold, and, by an agreement in writing of that date, transferred all his right, title and interest in the said contract of 2d March, 1857, to the plaintiff, for a valuable consideration.

4th. That the defendant put Folsom into the possession of the land under the said contract at the time of its execution, and Folsom delivered the possession thereof at the time of the assignment to the plaintiff, and he had no knowledge or information of the agreement of the 12th of March, 1857, or the claim under it at that time, or until after the tender and demand of the deed, as hereinafter stated; but he knew at the time of such assignment, of the additional debt of Folsom to Kimball above mentioned.

5th. That the plaintiff having paid all the semi-annual interest that became due and payable, after the 2d day of March, 1859, before the 2d day of March, 1861, on the contract, did, on that day, cause a tender to be made to the defendant of the full amount then due thereon, together with the expense of acknowledging a deed, and demanded execution of a deed then presented, which in all respects conformed to the requirement of the original contract; and the defendant refused to execute the deed or convey, on the sole ground

that the two notes above mentioned, which he held against Folsom and Knowlton, should also be first paid.

That Folsom went to the defendant on the 1st day of March, 1859, to get the extension of the contract with a view of making an assignment thereof to the plaintiff pursuant to a previous arrangement; he, however, did not communicate that fact to the defendant, but only told him, that the plaintiff was to assist him pecuniarily, and that he wanted to get the extension for that purpose. The plaintiff personally paid the semi-annual interest that fell due on the 2d day of September, 1860; and also had two interviews with him, one in May, and the other in June of the same year, " on the subject of the payment of the contract and assignment to him;" and nothing was said on either of those occasions by the defendant about the said agreement of March 12th, 1857, or any claim under it.

It may be proper to state in this connection, that the referee in his decision, on which the judgment was rendered, found substantially the facts above set forth; and, in addition thereto, he also found that the sale by Folsom to Reeves, the plaintiff, of the contract " was an absolute one, and the purchase price was agreed to be paid by said Reeves by applying the same towards the payment of certain notes of said Folsom, which had been indorsed by said Reeves;" that the plaintiff, at the time of taking the assignment of said contract, made no inquiries of Folsom whether he owed any additional debt to the defendant, or whether there was any further claim on the land, and that the tender made by the plaintiff as above stated has been kept good by him. This decision is, however, not set forth in the case itself, nor referred to therein in any manner. It therefore cannot be regarded or considered at all by this court.

The referee found and decided, " as matter of law," among other matters not now necessary to be noticed, that the defendant was entitled to recover, not only the sum of $600, agreed to be paid under the original contract, and the interest thereon from the 2d day of September, 1860, but also

the sum of $134, and interest thereon from March 1st, 1859, being the said sum of fifty dollars paid in cash at the time of the settlement of the debt; and the sum of eighty-four dollars for the two years interest on the said sum of $600, which was included in the notes then given, but has never in fact been paid; and therefore ordered, that, upon the payment of the said amounts together with the costs of the suit, the defendant should convey to the plaintiff the premises described in the contract.

The question is thus presented, whether the defendant was bound to execute the conveyance demanded without the payment to him of such sums as he had (to use the language of his declaration or statement of the 12th of March, 1857) " subsequently let him (Folsom) have for his note or become holden for by indorsement or otherwise for him."

Assuming, but not conceding, the plaintiff to have been a *bona fide* purchaser of the original contract, without knowledge or notice of that declaration or agreement, he, by the assignment thereof, according to his own statement in the complaint of its terms, and as it is set forth in the case, only acquired Folsom's " right and interest" therein. He, after signing the certificate that such declaration or statement was " perfectly just and true," and acknowledging himself " equally indebted and obligated to pay the same before the delivery of a deed for the within premises, for any such additional sum so advanced to me, as if originally incorporated in said contract," clearly would have had no right to such conveyance, and his assignee, on general principles, could not obtain any greater or different interest than he himself had. Does the fact, that he became such *bona fide* purchaser without notice, give him any greater or different right than Folsom had? I think not. It is a fair conclusion, from all the facts found by the referee, that the sum of $600, mentioned in the contract, had been paid by the defendant, for Folsom, to Joseph Knowlton, the grantor of the premises described therein, and that the deed therefor had been executed to him instead of Folsom, not as absolute owner, but

only as security for the said money so paid, and also for any other additional sums that might be advanced by him. The parties, therefore, stood substantially in the relation of mortgagor and mortgagee in relation to the whole of such moneys; and assuming that to be so, then even if Folsom had actually held the legal title to the land, instead of the contract therefor, and had executed a conveyance thereof to the plaintiff, such conveyance (the recording acts having no application to the case) would have been subject to the defendant's rights as such mortgagee.

The rights of the parties would be the same if, as the appellant's counsel insists, Folsom, as purchaser, was to be considered "in equity as owner and his vendor as trustee of the legal title." His equitable title was subject to the payment of all the money he agreed to pay, as a condition of acquiring the legal title, and that was held by the defendant as security for such payment. The plaintiff, as the assignee of Folsom's interest, owned and held it subject to the same burden.

The equitable right of the defendant to hold it as such security, was prior in time and superior to that of the plaintiff; and he, having such right as well as the legal title, could not be called upon to part with that title without payment of what was due to him.

If these views are correct, then we must inquire whether the referee erred in deciding that the sum of eighty-four dollars, for arrears of interest, included in the notes, should be paid as well as the fifty dollars paid in cash, as a condition of the execution of the deed. That interest had not in fact been paid, nor does the referee find that the notes, or either of them, were accepted as payment.

Under the circumstances, the construction most favorable to the plaintiff is, that this sum (assuming it to have been indorsed on the contract) was an advance within the meaning of the agreement of the 12th day of March, 1857. If not, then it was clearly payable under the original contract. In any aspect of the case, therefore, the referee decided correctly in directing its payment.

HAND — VOL. I.    39

These considerations, assuming them to be correct, lead us to the conclusion that the judgment, in the most favorable view of the question, was right.

If, however, they are deemed erroneous, it is necessary to inquire whether the plaintiff is to be regarded as a *bona fide* purchaser without notice.

The referee, in the findings of fact stated in the case, has not found what the consideration of the assignment was, but he finds, as a matter of law, among other things, "that the plaintiff is not a *bona fide* purchaser of said contract, on the ground that he parted with no value for the transfer ; that it was taken in payment of a precedent debt." The ground so stated, although contained in the finding as "matter of law," is really a finding of fact, and, in the absence of anything showing a consideration or value paid at the time of the assignment, warrants the legal conclusion that he was not a *bona fide* purchaser.

The referee has also found the following propositions, separately, as matters of law, in support of his final judgment :

1st. " That the plaintiff purchased and took the assignment of the contract, subject to all the equities at the time between Folsom and defendant."

2d. " That the assignment of the contract to Folsom to the plaintiff, was the assignment of a mere chose in action with all its incidents and equities."

3d. " That the defendant, at the time of the transfer of the contract to plaintiff, had an equitable interest or mortgage of the premises, by virtue of the agreement of March 12th, 1857, for the amount of advances and liability incurred after that date ;" and

4th. " That the amount of such advances is the sum of $134, as of the 1st of March, 1859, being fifty dollars in cash, and eighty-four dollars the two years' back interest indorsed on the contract that day."

A separate exception was taken to each of these findings.

The first, third and fourth of them have been examined in

the consideration of questions above decided, and are substantially correct.

Assuming that the second proposition was not strictly accurate, in stating that the assignment of the contract was an assignment " of a mere chose in action," the designation of the interest assigned, by an inappropriate term, did not affect the judgment. It was, at most, only assigning a wrong or erroneous reason, or presenting an unsound argument, in support of correct decision on the merits, and the error, if any, is wholly immaterial, and affords no ground for a reversal of the judgment.

The plaintiff also insists, in his points, that the defendant is estopped " from setting up his equitable mortgage or claim." He has not done or said anything, or omitted to do or say anything, by which the plaintiff was induced to take the assignment. Indeed, it does not appear that he had any knowledge or notice that the plaintiff intended to take it.

All of the interviews which took place between plaintiff and defendant were subsequent to the assignment, and of course nothing that was then said or omitted could have influenced the action of the plaintiff in taking it; and although Folsom was in possession of the land at the time, the plaintiff knew that he held under the contract, and, I may add, that he also knew of the additional debt then owing by Folsom to the defendant, and if either party was chargeable with an omission, which led to a want of notice by the plaintiff of all of the defendant's claims and rights, it was, more properly, attributable to the plaintiff than to the defendant.

During the progress of the trial, the following question was put to Folsom on his examination, " At the time you assigned the contract to Reeves did you have an agreement with Reeves to protect Kimball's notes ?" This was " objected to as not admissible under the pleadings, and 2d, as leading." The objection was overruled, and an exception taken. It will be proper to say, in reference to this exception, that it is not relied on in the appellant's points, and therefore is probably

abandoned, although it is not so stated.   If not, it is not well taken.   The first ground of the objection was not correct in fact.   The answer does allege " that a part of the consideration of the transfer of such contract by the said Folsom to the plaintiff, was the agreement of the plaintiff to pay to this defendant, over and above the amount due upon said contract, the amount of said indebtedness under the last mentioned agreement," which had been previously stated and set forth, and the question was pertinent as tending to rebut the claim that the plaintiff was a purchaser without notice of the defendant's rights under that agreement.   Conceding it to be leading, that is not a sufficient ground for the reversal of the judgment.

Our conclusion, therefore, on the whole case is, that the judgment should be affirmed with costs.

WOODRUFF, J.   Upon the facts found by the referee in this case, I think the judgment of the Supreme Court should be affirmed.

On the 2d of March, 1857, the defendant gave to Chester Folsom an agreement in writing, by which he bound himself to convey to Folsom, the premises described in the plaintiff's complaint, provided Folsom should pay to him $600 three years from that date, and should also semi-annually pay the interest thereon; which sum the defendant had advanced for Folsom in purchase of the premises, taking the deed as security.   On the 12th of March, Folsom and the defendant further agreed in writing, that the defendant should hold the land, not only as security for the $600 and interest, but for such other sums as the defendant might subsequently " let him have for his note, or become holden for by indorsement, or otherwise, for him;" and Folsom bound himself to pay the same before the delivery of a deed, as if those additional sums had been originally incorporated in the first named agreement.   Folsom was put by the defendant in possession of the land.

On the 1st of March, 1859, the interest on the $600 being

wholly unpaid, Folsom applied to the defendant to extend the time for the performance of the conditions of the contract, and for a further advance, and the defendant thereupon advanced him fifty dollars in money, wrote upon the original contract a receipt acknowledging the payment of the interest to that date, and agreed to extend the contract another year, beyond March, 1859 ; and thereupon took Folsom's notes for the fifty dollars, the eighty-four dollars interest, and for amounts due on other transactions between them.

At that time, and as a reason for asking an extension of the time for performance of the conditions, Folsom told the defendant, that the present plaintiff was to assist him pecuniarily, but did not inform him of any purpose to assign his contract.

The defendant had, therefore, at that time, no reason to suppose that the plaintiff was about to acquire any interest in the premises, or that the pecuniary assistance which Folsom expected from the plaintiff, was not intended to enable Folsom himself to perform the conditions of these agreements, and so acquire the title to the lands.

But thereafter, Folsom assigned the contract of the 2d of March to the present plaintiff, and the referee finds that at the time of that assignment, the plaintiff knew of the additional debt of Folsom to the defendant, but that he received the assignment, and went into possession of the land, on the supposition that he would be entitled to a conveyance upon the payment of the amount due upon the agreement of March 2d, 1857, and without any knowledge or information of the agreement of March 12th, 1857, above stated.

In May and June, 1860, plaintiff conversed with the defendant about the assignment, and in September paid to him six months interest, and on neither occasion was any thing said by the defendant " about the agreement of March 12th, 1857, or claim against the land under it."

In the findings of the referee, forming a part of the case, he does not state what constituted the consideration for the assignment by Folsom to the plaintiff, but he does profess to

find, as a "matter of law," that "the plaintiff is not a *bona fide* purchaser of said contract, on the ground that he parted with no value for the transfer; that it was taken in payment of a precedent debt." In his report, which is contained in the judgment roll, he finds that "the sale was an absolute one, and the purchase price was agreed to be paid by said Reeves, by applying the same towards the payment of certain notes of said Folsom, which had been indorsed by said Reeves." But even here, there is no finding that the plaintiff in fact, paid any thing towards that purchase price. If it would affect the result, it might be regretted, that the referee, when he found by his report that the assignment was taken in payment of a precedent debt, should have left it doubtful whether the purchase price was to be applied as payment to the plaintiff of notes of Folsom, which had been indorsed, and already taken up by the plaintiff, which is most consistent with his report, or notes which had been indorsed, and were agreed to be thereafter taken up by him, which latter would seem to be the construction given to the finding in the opinion of the Supreme Court.

In my opinion, however, this obscurity in the meaning of the finding cannot affect the decision which it is our duty to make.

The defendant holds the title to the lands; and whether that title be regarded as an ownership of the lands, or an interest as mortgagee, as between him and Folsom, with whom he entered into the contracts, he cannot upon any grounds, legal or equitable, be compelled to give up that title until he is paid all that was secured to him by the two agreements made with Folsom about two years before the plaintiff had any concern in the matter.

Folsom held an agreement from the defendant, according to the tenor of which, he was entitled to a deed upon the payment of $600 and interest; but that agreement had been modified so as to require the payment of other sums mentioned in the later agreement.

There is, of course, no pretence that agreements for the conveyance of lands have the character of negotiability.

On what ground, then, can any claim be made that Folsom could assign to the plaintiff a better right than he had himself, or, in another form, a right to have from the defendant a conveyance on terms more favorable than Folsom could himself demand it?

No *legal* ground is alleged or claimed to exist. If there be any ground, it must be some equity in favor of the plaintiff higher than the legal and equitable rights of the defendant, and sufficient to override them. For if the equity of plaintiff and defendant are equal, the defendant may repose in his actual position. Where equity is equal, the law must prevail; and if time be regarded, then the maxim " *qui prior est in tempore, potior est in jure,*" affirms the right of the defendant; for this is as truly a maxim of equity as of law.

To disturb this position of the defendant, it must be shown that he has done or omitted something which it was inequitable for him to do, or omit to do, and which has invested the plaintiff with a superior equity, entitling him in priority to the clear right of the defendant, as between him and Folsom; for, looking at the contract in question as a mere chose in action, it is not questioned that, according to the decision in *Bush* v. *Lathrop*, in this court, (22 N. Y., 535), the assignor could not by assigning it confer any greater rights than at the time of such assignment he had himself.

The defendant has done nothing which can operate as an equitable estoppel of his claim, to be paid all that was secured to him by Folsom's second agreement. He neither said anything to the plaintiff which could mislead him, nor kept silence with knowledge that the plaintiff was about to take an assignment from Folsom. He was not present at any negotiation on that subject, and, in fact, he did not know or have any reason to suppose that the plaintiff contemplated the taking of such assignment until after it was done. I do not mean by saying this, that it would have been his duty to seek the plaintiff and give him warning, if he had heard of such a purpose. I think, on the contrary, that if the plaintiff desired to be safe in his dealing with such a contract, he

should have sought the defendant and learned from him whether there were or were not a defence to a claim for the performance of that contract, without other conditions than those expressed in it. This, I apprehend, is the general rule where a party intends to deal with instruments which by law are not assignable. But I state the facts as broadly as they are found by the referee, to show that no equitable estoppel can arise by reason of any failure of the defendant to give notice of his claims to the plaintiff; he neither knew nor had reason to believe that the plaintiff had or expected to have any interest or concern in that matter.

But he did not disclose his claim when he did hear of the assignment. Very true, but the assignment had then been made. His then volunteering the information was not called for by any principle out of which the doctrine of equitable estoppel arises. Besides, knowing nothing of the negotiation between Folsom and the plaintiff, except that the plaintiff "was to assist Folsom pecuniarily," and nothing of the actual terms of the assignment, he had no reason to suppose that Folsom had not acted with entire candor and honesty, or that the plaintiff was ignorant of the precise relation of Folsom to him and to the premises. And when to this is added that, in fact, as the referee finds, the plaintiff did know that Folsom owed the additional or further debt to the defendant, there can be no pretence that the defendant is estopped by failure to give notice to the plaintiff. If either, under the circumstances, should have sought the other, the plaintiff should have sought the defendant.

What further facts are there in the case? Simply and only this: Folsom was in the possession of the land, and he had in his possession the agreement.

But the moment the plaintiff saw the agreement he was apprised that Folsom's possession was under the defendant, and that such possession was not *per se* evidence of the nature or conditions on which he held.

The fact of possession, therefore, becomes wholly immaterial, and the question is reduced to this: Does a contract for

the sale or conveyance of land carry with it such assurance that the holder of the title will convey according to its terms, that third persons may act in faith thereof without inquiry, and compel such holder to convey, notwithstanding he has a defence good against him with whom the contract was made? It seems to me enough to state the question. Contracts for the conveyance of land have no such force, and no such character of negotiability. If they had, then an actual release by the party with whom the contract was made would avail nothing.

Such a contract does not carry to third persons so strong a guaranty of future performance as a bond for the payment of money; and yet the assignment of such a bond is confessedly subject to set-off, to proof of payment, release or other legal or equitable grounds upon which the obligor might resist payment, if pursued by the obligee.

On any principle of balancing of equities, I am not able to discriminate between the two cases.

The only room, I think, for doubting the correctness of the judgment arises from the suggestion that the defendant had indorsed upon the contract of March 2d a receipt for the interest to March 1st, 1859, and taken Folsom's note therefor; while, on the other hand, the agreement of March 12th is claimed to include only actual and fresh advances.

The terms of the latter agreement declare that the premises are held for the $600 and interest, and "such other sums as I may subsequently let him have for his note, or become holden for by indorsement or otherwise for him." I do not think that, as between the defendant and this plaintiff, the defendant, after having acknowledged on the contract of March 2d that he had received the interest, could be permitted to contradict his receipt, and claim the eighty-four dollars *as interest* on that $600, unless the general and vague finding of the referee that the plaintiff, when he took the assignment of that contract, "knew of the additional debt of Folsom to the defendant," can be construed as importing that the plaintiff knew that that interest had not in fact been

paid. But the reasoning which leads to this, makes this acceptance of Folsom's note and giving time for that payment in substance and, I think in a just sense, a letting of Folsom have that sum for his note, within the meaning of the agreement of the 12th of March, and made that agreement operate as a security therefor.

The judgment should be affirmed; but the plaintiff should be permitted to pay the amount due to the defendant, with interest and costs, and receive a deed within a reasonable time, to be limited in the order.

All concurred for affirmance except JAMES, J., who thought there should be a modification, by deducting the eighty-four dollars and interest from the sum of advances allowed by the referee.

Judgment affirmed, with leave to the plaintiff to pay the amount found due by the referee, and interest and costs, and receive a conveyance.

NOTE.—This judgment is in harmony with the *dictum* of Comstock, Ch. J., in Stoddard *v.* Hart (23 N. Y., 559, 560), except that a doubt is there hinted as to a *bona fide* purchaser. [REP.]