SQUIRE v. GREENE et al.

GEARON v. SAME.

(Supreme Court, Appellate Division, Second Department. July 11, 1898.)

1. MORTGAGES—PRIORITIES—ASSIGNMENT.

If an owner of property subject to a mortgage executes another mortgage to raise funds to pay off the first, and the person to whom the transaction is intrusted, upon paying off the original mortgage accordingly, takes an assignment thereof, and thereafter acquires the second mortgage also, his representation, upon assigning the latter to a purchaser for value, that it is a first mortgage, gives it precedence over the earlier one, which he subsequently assigns to another person for value and without notice.

2. SAME.

The same result would follow even though it did not appear that the earlier mortgage had been paid, or how he procured it, and although, when he made the representations, he had not then become the assignee thereof.

3. SAME—CONSTRUCTIVE NOTICE.

The provisions of the recording act, in respect of constructive notice, are inapplicable to such a situation, and would not vary the result.

Appeal from special term, Kings county.

Actions by Pauline W. Squire against Ella V. Greene and Maria S. Dunkin, and by Artlissa V. Gearon against the same defendants. From judgments of foreclosure of mortgages in both actions (50 N. Y. Supp. 26), defendants appeal. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Jacob F. Miller, for appellants.
Rush Taggart, for respondent Pauline W. Squire.
M. Gearon, for respondent Artlissa V. Gearon.

GOODRICH, P. J. A history of the title to certain premises in Hall street, Brooklyn, and of the execution of three mortgages, is requisite to the consideration of the rights of the respective parties to these actions. Mrs. Squire claims to be the owner of a first mortgage on the premises for $1,800, dated January 9, 1884; Mrs. Gearon claims to be the owner of a second mortgage thereon of $1,200, dated April 24, 1889; while the defendants, Greene and Dunkin, claim to be the owners of a mortgage of $3,000, dated September 15, 1891, and which they contend, though subsequent in date to the two former

mortgages, was executed for the purpose of raising money to pay off the first two mortgages, and, by reason of the circumstances, is of equity superior to both. The premises were originally owned by Curtin. He executed a mortgage for $1,800 to Roberts, dated January 9, 1884, recorded January 10, 1884. Curtin conveyed to Davenport by a deed dated January 7, 1887, recorded January 10, 1887. Davenport conveyed the premises to McCann by a deed dated April 24, 1889, recorded July 3, 1889, subject to the $1,800 mortgage. McCann executed a consideration mortgage of $1,200, dated April 24, 1889, recorded July 3, 1889. He conveyed the premises to Brown by deed dated April 20, 1891, recorded April 30, 1891, subject to the two mortgages, of $1,800 and $1,200. Brown conveyed to Kearney by deed dated September 15, 1891, recorded October 2, 1891, subject to all liens and incumbrances on the property. After Kearney became owner of the property, he retained William H. Nafis, an attorney at law, to obtain a new mortgage of $3,000, for the purpose of raising money to pay off the two mortgages already upon the property, and, under Nafis' instructions, executed a mortgage to Anderson for $3,000, dated September 15, 1891, recorded November 13, 1891. With the proceeds of this mortgage, Nafis paid Roberts the amount of his $1,800 mortgage, but, instead of satisfying the mortgage of record, took an assignment of it from Roberts to Anderson, dated October 3, 1891, and recorded October 26, 1891. It will be seen that on October 26, 1891, according to the record, there were outstanding the $1,800 mortgage held by Anderson, the McCann mortgage of $1,200 held by Davenport, and the Kearney mortgage of $3,000, also held by Anderson. In 1893, Nafis apparently conceived a scheme of fraud. He procured an assignment to himself of the $1,800 mortgage, dated April 12, 1893, but not recorded until July 16, 1895. He afterwards procured an assignment of McCann's mortgage of $1,200, dated January 12, 1894, recorded December 22, 1896. He also procured an assignment of the Kearney mortgage of $3,000, from Anderson to himself, dated April 12, 1893, recorded April 21, 1893. Thus we have at this time the premises owned by Kearney, subject, as appeared by record, to three mortgages, of all of which Nafis was the apparent owner. The first transfer of any of the mortgages was that of the Kearney mortgage of $3,000, to the defendants, Greene and Dunkin, by assignment dated April 20, 1893, recorded April 21, 1893. The next assignment was by Nafis to Squire of the Curtin mortgage of $1,800, by assignment dated July 3, 1895, recorded July 16, 1895. The next assignment was by Nafis to Gearon, of the McCann mortgage of $1,200, by assignment dated September 25, 1895, recorded December 22, 1896. There was nothing in the assignments indicating to any of the assignees, Greene and Dunkin, or Squire, or Gearon, the relative order of priority of the mortgages. Each of the assignees became a holder, for a valuable consideration, of one of the mortgages, without notice, other than by record, of the actual priority of any one mortgage, unless there were transactions or declarations of such priority by Nafis at the time of the assignment of the several mortgages.

When Nafis assigned the $3,000 mortgage to Greene and Dunkin

he represented to them that it was a first mortgage upon the premises, and, if he had fulfilled the purpose for which that mortgage was executed, namely, the taking up of the $1,800 mortgage and the $1,200 mortgage, he would have obtained satisfactions thereof, instead of which, for some unexplained purpose, he kept the mortgage apparently alive by assignments of them to himself. More than two years afterwards he assigned such mortgages to Squire and Gearon, respectively. His representation that the $3,000 mortgage was the first mortgage must be attached to the assignment, and thereby its priority in the hands of its present holders, Greene and Dunkin, is established, unless the fact of the record of the Curtin and McCann mortgages showed a clear and unassailable title to them in Nafis, which he could transfer to an innocent purchaser for value.

The two mortgages, of $1,800 and $1,200, stand on different planes, and we shall first consider the former, which is the one held by the plaintiff Squire. The $3,000 mortgage was dated September 15, 1891, and recorded November 13, 1891. It was ostensibly executed by Kearney, who was then owner of the premises, for the purpose of raising money to enable him to pay off the two prior mortgages of $1,800 and $1,200. This $3,000 mortgage really represented the same debt, though to different persons, as the other two mortgages. So far as the land, which primarily was chargeable with the debt, was concerned, there was but one liability, and the extent of that was $3,000. In 1 Jones, Mortg. (5th Ed.) § 356, it is said:

"When several mortgages are made of distinct parcels of land to secure one and the same debt, they constitute, in effect, one mortgage, and their unity is determined by the debt secured. Parol evidence is admissible for this purpose, and, whether the debt be described in the same way in the different mortgages or not, it may be shown that they are only additional security for the same debt. A mortgage given to secure separate debts to several persons is several in its nature, as much as if several instruments had been simultaneously executed."

The evidence shows that a part of the money received on the $3,000 mortgage was actually used in paying off the $1,800 mortgage, and the holder of that mortgage, in point of fact, received its amount in payment of it, and it was actually paid. That Nafis took an assignment of it to Anderson, instead of a satisfaction of it, makes no difference. Anderson thus held at the same instant the $3,000 mortgage and the assignment of the $1,800 mortgage, but the debt represented by the $1,800 mortgage was a part of the debt represented by the $3,000 mortgage. The whole indebtedness chargeable to the land did not exceed $3,000. Anderson, being the holder of both securities, had the right to make the one or the other the prior mortgage, and when he assigned the two to Nafis he assigned whatever rights he had. These assignments to Nafis were dated on the same day, April 12, 1893, but the assignment of the $3,000 mortgage was recorded April 21, 1893, and of the $1,800 mortgage July 16, 1895.

Meantime, and on April 20, 1893, Nafis assigned the $3,000 mortgage to Greene and Dunkin, with the representation that it was a first mortgage. So far as the $1,800 mortgage is concerned, the

$3,000 mortgage was the first mortgage, because a part of the con-
sideration received therefor had been actually applied to the payment
and extinguishment of the $1,800 mortgage, and the latter no longer
existed so as to be enforceable against the maker by either Ander-
son or Nafis.    When Nafis, therefore, on July 3, 1895, assigned the
$1,800 mortgage to Squire, he could only assign it subject to any de-
fenses existing against it in his hands.    Greene and Dunkin, being
then innocent holders for value, of the $3,000 mortgage, could say
that it was executed and the money received partly for the payment
and cancellation of the $1,800 mortgage; that the money was so
used; that the $1,800 mortgage was thereby extinguished, and,
although Nafis took an assignment instead of a cancellation of that
mortgage, he could not be permitted to enforce it.    As Nafis had no
right to enforce the $1,800 mortgage against the holder of the $3,000
mortgage, he surely could not revivify it, and convey, even to an inno-
cent holder, any such right.    It follows that the $1,800 mortgage held
by the plaintiff Squire is subordinated to the $3,000 mortgage held
by Greene and Dunkin.

Van Rensselaer v. Stafford, Hopk. Ch. 641, affirmed in 9 Cow. 316,
is authority upon this subject.    In that case a question arose as to
the priority of two mortgages.    Van Deusen, having purchased land
of Van Rensselaer, for which he had not paid, sold part of the land
to Wright, from whom he took two mortgages of the same date, for
part of the consideration, intending that one of the mortgages should
be assigned to Van Rensselaer to secure the original consideration,
and that it should have priority.    The mortgages were recorded
concurrently, but the one intended for Van Rensselaer was first as-
signed to him, and afterwards the other was assigned to Stafford, in
good faith and for full value.    The chancellor said (pages 645, 648):

"While Van Deusen was a mortgagee, holding these two mortgages, with
full power over both, he was at liberty to transfer either or both of them.
He had power to transfer one of them, in such manner as to give his as-
signee a preference against the other mortgage retained by himself, and such
a preference might be given either by express stipulation or by the effect of
equivalent acts.  *  *  *  Van Deusen, holding both mortgages, postponed one
to the other against himself, as he might well do.    This state of rights be-
tween Van Rensselaer and Van Deusen results from the clearest principles of
law and morals; and Van Rensselaer's right to a preference against Van
Deusen was, in the language of this court, an equity,—a claim of justice,—
which courts of equity enforce."

The $1,200 mortgage held by the plaintiff Gearon stands somewhat
differently.    It remained in the hands of Davenport until January
12, 1894, when it was assigned to Nafis.    The assignment was not
recorded till December 22, 1896.    On September 25, 1895, Nafis as-
signed it to Gearon, the assignment being recorded on December 22,
1896, the same day that the assignment to Nafis was recorded.    It
does not appear, except by the date of the assignment, what was the
actual date of the transaction, nor where Nafis obtained the money
with which he paid Davenport for the assignment.    Long before that
date, viz. on April 20, 1893, he had assigned the $3,000 mortgage to
Greene and Dunkin, with the representation that it was the first mort-

gage on the property, and this representation must be attached to the assignment and become a part of the contract with the assignees.

The plaintiff's counsel contends that the authorities lay down the doctrine that the defenses which may be interposed to the mortgage must be such, and such only, as existed at the time of its inception. In support of his contention he cites several cases, but no one of them holds that, under circumstances like the present, Nafis could convey to an innocent purchaser any greater rights than he possessed. It is clear that Nafis, after taking an assignment of the $1,200 mortgage, could not have enforced its priority to the $3,000 mortgage, for he was estopped to set up such priority by his representation to Greene and Dunkin.

The only doubt upon this question arises from the fact that at the time of such representation he was not the common owner of the two mortgages for $3,000 and $1,200. But I think this makes no difference. It is true that Davenport could have enforced the priority of his mortgage, so long as he remained the owner of it, and that he could have assigned that right to an innocent purchaser; but when he assigned the mortgage to Nafis he assigned it, not to an innocent purchaser, but to one who had full knowledge of the facts, and who had already assigned the $3,000 mortgage with the representation that it was a first lien on the premises. Any subsequent assignment by Nafis of the $1,200 mortgage was subordinate to the right of the holders of the $3,000 mortgage to claim the priority of the latter. Nafis transferred whatever equity he had,—no more; no less. This is the provision of section 1909 of the Code of Civil Procedure, which says:

"Where a claim or demand can be transferred, the transfer thereof passes an interest, which the transferee may enforce by an action or special proceeding, or interpose as a defense or counterclaim, in his own name, as the transferor might have done; subject to any defense or counterclaim, existing against the transferor, before notice of the transfer, or against the transferee."

As Nafis could not have enforced the priority of the $1,200 mortgage against the $3,000 mortgage, no more can his assignee, who took no other or greater right than Nafis possessed.

Said the court in Bush v. Lathrop, 22 N. Y. 535, 538:

"The rule, as generally stated, is that the purchaser takes only the interest which his assignor had to part with; or, as expressed by Lord Thurlow: 'A purchaser of a chose in action must always abide by the case of the person from whom he buys.' 'This,' he said, 'I take to be the general rule.' Davies v. Austin, 1 Ves. 247. * * * The rule, as thus stated, is the only logical one. In the transmission of property of any kind, from one person to another, the former owner can, in reason, only transfer what he himself has to part with, and the other can only take what is thus transferred to him."

A similar doctrine is laid down in Reeves v. Kimball, 40 N. Y. 299, 311, where Bush v. Lathrop was cited, the court saying: "The assignor could not, by assigning it, confer any greater rights than at the time of such assignment he had himself." Further approval of the same doctrine, if needed, may be found in Cutts v. Guild, 57 N. Y.

229, 232; Schafer v. Reilly, 50 N. Y. 66; Trustees v. Wheeler, 61 N. Y. 88, 105.

The only question remaining to be considered is whether there is any provision in the recording acts (2 Rev. St. [9th Ed.] p. 1841) which varies the rights of the parties. Section 33 provides that the recording of any conveyance (and this, by section 37, includes mortgages) shall be constructive notice of the execution of such conveyance to all purchasers subsequent to such recording; but this cannot, under the authorities, be held to affect the results arising out of the representation of priority made by Nafis, as shown in the present action.

The judgment must be reversed, and a new trial granted, with costs to abide the event. All concur.