NORTHWESTERN IMPROVEMENT CO. ET AL., RESPOND-
ENTS, *v.* RHOADES ET AL., APPELLANTS.

(No. 3,667.)

(Submitted May 15, 1916.  Decided June 17, 1916.)

[158 Pac. 832.]

*Mortgages — Assignment — Fraud—Payment—Merger—Prin-
cipal and Agent—Bills and Notes—Holder in Due Course.*

Mortgages—Principal and Agent—Fraud—Assignment—Effect.
1. Where an agent falsely reported to his principal that he had pur-
chased clear title to land with money furnished to him by the latter
for that purpose, and later paid a mortgage thereon, causing it to be
formally assigned to a third party, who knew nothing of the transac-
tion and paid nothing, any title passed by the assignment vested in the
principal.

Same—Assignment to Owner—Merger.
2. A mortgage which passed to the owner in fee, who has no intention
to keep it alive, is extinguished by merger.

Bills and Notes—Holder in Due Course—Accepting Overdue Note—Effect.
3. A bank which accepted a note four years overdue did not become a
holder in due course, but took only the title thereto which the assignor,
its debtor, had, with the risk of all defects therein as well as of the
defenses to it or demands existing at the time against him with refer-
ence to it.

Mortgages—Satisfaction of—What may Constitute.
4. *Obiter:* Under the circumstances referred to in paragraph 1, *supra,*
the action of the agent in paying the mortgagee canceled the debt and
satisfied the mortgage, even though such was not his intention.

Same—Overdue Notes—Accepting Without Inquiry—Effect.
5. A bank which in consideration of a loan accepted an overdue note
and a mortgage securing it without inquiry of the record owner of the
mortgaged land, was at fault and was therefore properly adjudged to
bear the loss incident to the dishonest transaction mentioned in para-
graph 1, *supra.*

[When fraud in delivery of a negotiable note is available as a de-
fense, see note in 37 Am. St. Rep. 458.]

---

For cases passing on the question of rights of holder of negotiable
paper transferred after maturity, see note in 46 L. R. A. 753 et seq.

*Mr. Elmer E. Hershey,* for Appellants, submitted a brief and argued the cause orally.

"That a note secured by mortgage is overdue does not prevent one holding it under an apparently valid transfer from the true owner from conferring a good title upon an innocent purchaser for value, although he secured the transfer by fraud." (*Gardner* v. *Beacon Trust Co.,* 190 Mass. 27, 112 Am. St. Rep. 303, 5 Ann. Cas. 581, 2 L. R. A. (n. s.) 767, 76 N. E. 455.) In the note to this case many cases are cited and distinguished. The case of *Young Men's Christian Assn. Gymnasium Co.* v. *Rockford Nat. Bank,* 179 Ill. 599, 70 Am. St. Rep. 135, 46 L. R. A. 753, 54 N. E. 297, is given as closely in point.

Upon the question that appellants could take no better title than Rhoades himself had, or Mulroney, who held the title for Rhoades, had, see *Young Men's Christian Assn. Gymnasium Co.* v. *Rockford Nat. Bank, supra; Lee* v. *Turner,* 89 Mo. 489, 494, 14 S. W. 505; *McNeil* v. *Tenth Nat. Bank,* 46 N. Y. 325, 329, 7 Am. Rep. 341; 2 Parsons on Notes and Bills, 42 *et seq.;* Tiedeman on Commercial Paper, sec. 295.

"Where an agent, being authorized to pay off a mortgage on his principal's land, fraudulently takes an assignment thereof to himself, an assignment by him of the mortgage to a *bona fide* purchaser for value will vest in the latter a good title thereto, and the principal will be estopped to deny the agent's title." (*Gearon* v. *Kearney,* 22 Misc. Rep. 285, 50 N. Y. Supp. 26.)

As said in 2 Corpus Juris, section 561, the general rule is such as would entitle appellants to a judgment of foreclosure, and in support of this general rule the decisions of the United States and twelve states are set forth in the note thereto. When proper distinctions are observed, it will be found that the authorities generally support the view that the rights of appellants who took the note in question in good faith for value, though after maturity, must prevail over those of plaintiffs, notwithstanding plaintiffs' agent, in fraud of his principal, caused the transfer of the title of said note to appellants.

*Mr. W. W. Patterson* and *Messrs. Gunn, Rasch & Hall,* for Respondents, submitted a brief; *Mr. Patterson* argued the cause orally.

Notwithstanding the fact that Rhoades procured an assignment of the mortgage to Mulroney and received the note indorsed by the payee, the effect of the transaction, so far as the respondents are concerned, was the payment of the note and the extinguishment of the mortgage lien. The only case cited in the brief for appellants against the foregoing proposition is the case of *Gearon* v. *Kearney,* 22 Misc. Rep. 285, 50 N. Y. Supp. 26, and that case is a direct authority in support of our contention that the indebtedness secured by the mortgage in question was paid and the mortgage rendered *functus officio.*

As the payment by Rhoades to the mortgagee operated to extinguish the mortgage, notwithstanding the form of the transaction, the mortgage could not thereafter be revived, and consequently the subject matter of the assignment by Mulroney to Keith was not in existence when the assignment was made. (*Bogert* v. *Bliss,* 148 N. Y. 194, 51 Am. St. Rep. 684, 42 N. E. 582.)

The cases of *Young Men's Christian Assn. Gymnasium Co.* v. *Rockford Nat. Bank,* 179 Ill. 599, 70 Am. St. Rep. 135, 46 L. R. A. 753, 54 N. E. 297, and *Gardner* v. *Beacon Trust Co.,* 190 Mass. 27, 112 Am. St. Rep. 303, 5 Ann. Cas. 581, 2 L. R. A. (n. s.) 767, 76 N. E. 455, are cited in the brief for appellants. In the first of these cases it was decided that where a negotiable promissory note is indorsed and delivered as collateral security, the pledgee may, even after the maturity of the note, transfer a good title thereto to an innocent purchaser for value. Under such circumstances, the owner of the paper, having clothed the pledgee with every indicia of title, is estopped from questioning the title of such purchaser. In the second case it was decided that an innocent purchaser for value of an overdue note secured by a mortgage obtains a good title, although the party from whom he made the purchase acquired the same by fraud. In both cases, however, the rule that a person cannot

acquire title to overdue commercial paper from a person without title is recognized and declared. The cases of *Lee* v. *Turner*, 89 Mo. 489, 494, 14 S. W. 505, and *McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 325, 329, 7 Am. Rep. 341, do not apply to the facts and circumstances of the case before the court. In both of those cases it was decided that where the true owner of commercial paper clothes another with the evidence of ownership, an innocent purchaser for value from the apparent owner will acquire a good title as against the true owner. These cases are based upon the doctrine of estoppel.

Let us assume that Rhoades purchased, instead of paid, the note. As he was the agent for the plaintiffs, the purchase, when made, inured to the benefit of the plaintiffs and the title vested in them. (*Dowd* v. *Holbrook*, 152 N. C. 547, 67 S. E. 1060; *Bergner* v. *Bergner*, 219 Pa. St. 113, 67 Atl. 999; Clark & Skyles on Agency, 919.) When, therefore, Rhoades obtained a delivery of the note and had the assignment of the mortgage made to Mulroney, who was acting for Rhoades and had no interest in the transaction, there was, by virtue of the law of merger, an extinguishment of the mortgage lien. The rule is that where the owner of property takes an assignment of a mortgage thereon, the mortgage is destroyed unless there is an intention on the part of the owner to keep the mortgage lien alive. (2 Pomeroy's Equity Jurisprudence, sec. 798.)

The defense, which was available against the enforcement of the mortgage by Mulroney, was not based on an equity in favor of a third party, but was a defense available by the owner of the property at the time the assignment was made by Mulroney to Keith. The title to the property stood of record in the name of the Northwestern Improvement Company, of which Keith was charged with notice. If he had made inquiry of that company, as he was bound to do, as the note was four years overtime and no interest had been paid thereon for several years, he would have learned that Mulroney had no right to make the assignment. Not having made such inquiry, he does not occupy any different or more favorable position than his assignor Mul-

roney occupied as against the plaintiffs.   (*Magie* v. *Reynolds,* 51 N. J. Eq. 113, 26 Atl. 150; *Nichols* v. *Lee,* 10 Mich. 526, 82 'Am. Dec. 57; *Purser* v. *Anderson,* 4 Edw. Ch. (N. Y.) 18; *Heppe* v. *Szczepanski,* 209 Ill. 88, 101 Am. St. Rep. 221, 70 N. E. 737; *Shepherd's Ex.* v. *McClain,* 18 N. J. Eq. 128; *Bennett* v. *Keehn,* 57 Wis. 582, 15 N. W. 776.)

MR. JUSTICE SANNER delivered the opinion of the court.

Some time prior to January 23, 1907, James M. Rhoades, of Missoula, was employed by the plaintiff railway company to purchase certain lands near Turah in this state, among them the southeast quarter of section 35, township 13 north, range 18 west, and on that date he reported to the company through its land commissioner, Thomas Cooper, that an agreement had been concluded for the purchase of said tract, conveyance to be made by deed of "general warranty, showing a title good in law and equity," for $5,500.   Concluding to purchase at this price, the railway company, through Mr. Cooper, directed Rhoades to procure abstracts, and sent him funds to make the purchase as soon as counsel, to whom the abstracts were to be sent, should approve the title.   Further instructions were to have the conveyances run to the plaintiff Northwestern Improvement Company, which is a corporation subsidiary to the railway company and holds much of its lands for its benefit.   Rhoades procured the abstracts, and sent the same to counsel, who promptly notified Cooper that title was unsatisfactory in two respects, one of which related to a mortgage standing of record in favor of Leonora B. Forbis; whereupon Cooper wired Rhoades not to close the transaction, and mailed him a copy of counsel's letter, calling attention to the title defects therein noted, and to the fact that the mortgage would have to be satisfied.   On May 9, 1907, responsive to an inquiry from Cooper, Rhoades reported that he was holding the money in bank awaiting title clearances, to be paid over "as soon as title is approved," and on May 25, 1907, he inclosed to Cooper a conveyance of the property from the owners of record, together with a quitclaim and affidavit from

certain predecessors in the title, as called for by counsel, stating at the same time that "the case is now closed," although in point of fact the mortgage had not been satisfied. Later, and on February 12, 1908, Rhoades appeared before E. C. Mulroney, the attorney for Leonora B. Forbis, and paid the amount of principal and interest due her, took the note indorsed "without recourse," and caused the mortgage to be formally assigned to John M. Mulroney, of Iowa, who knew nothing of the transaction at the time, and who paid nothing for the assignment. Thereafter the assignment was placed of record, and in June, 1911, Rhoades, being indebted to the defendant bank and desiring further accommodation, represented that he was the owner of said note and mortgage, and offered the same as collateral security. His offer was accepted, and he turned over the note and caused John M. Mulroney to assign the mortgage to the defendant Keith as president of the bank. The note was then nearly four years overdue, and title to the property affected by the mortgage stood of record in the plaintiff Northwestern Improvement Company; but neither the bank nor Keith had any knowledge of the circumstances under which Rhoades became possessed of the note or control of the mortgage. Thereafter, in consequence of demands of the bank, plaintiffs became advised of what had occurred, and brought this suit against Mulroney, Rhoades, Keith and the bank, to clear the record of the mortgage. All answered, Mulroney disclaiming any interest, and the bank seeking a foreclosure by way of cross-complaint or counterclaim. There was no conflict in the evidence, and judgment was given for the plaintiffs. The bank and Keith appeal from that judgment as well as from an order denying them a new trial.

The judgment is assailed upon the ground that, though the appellants took the note and mortgage long after maturity, and therefore subject to any defenses available to the maker, they did not take subject to latent equities in favor of third parties, and therefore the case made, showing that the mortgage appeared of record to be a valid and subsisting lien standing in the

name of Mulroney, and that neither the bank nor Keith had knowledge of any infirmity in the transaction, was insufficient.

We think the correct result was reached in this case for several reasons:

(a) The right of the appellants could not be established by [1] the record of the assignment to Mulroney and his assignment to Keith, because they fully understood that Rhoades— not Mulroney—was the claimant of the mortgage, and Mulroney's assignment for Rhoades. was valueless unless Rhoades had title to the mortgage as a subsisting lien. Such was not the fact. So far as the record discloses, the payment by Rhoades to the mortgagee occurred while he was still in the employ of the railway company; but whether this be so or not, he remained its agent for the purpose of completing what he had undertaken. Hence it matters little whether his payment to the mortgagee was intended by him as a purchase for his benefit or that of his principals, because the nature of his agency was such that any title to the mortgage which passed by virtue of the assignment vested at once in his principals. (2 Corpus Juris, 705, and notes; *Dowd* v. *Holbrook*, 152 N. C. 547, 67 S. E. 1060; *Bergner* v. *Bergner*, 219 Pa. 113, 67 Atl. 999.) [2] As they were the owners of the fee, and as they had no intention to keep the mortgage alive, if that were possible, the lien thereof became extinguished by merger. (2 Pomeroy's Equity Jurisprudence, sec. 796 *et seq.*)

(b) Again, the right of the appellants depends upon their situation with reference to the note, to which the mortgage was [3] a mere incident. (Rev. Codes, sec. 5746; *Cornish* v. *Woolverton*, 32 Mont. 456, 108 Am. St. Rep. 598, 81 Pac. 4.) Confessedly the bank did not become a holder of the note in due course (Rev. Codes, sec. 5900), but took only the title thereto which Rhoades had (Rev. Codes, sec. 4913), accepting the risk of all defects therein (Rev. Codes, secs. 5905-5907; 46 L. R. A. 776 *et seq.*), as well as of defenses to the note or demands existing at the time against Rhoades with reference to the note (Rev. Codes, secs. 6478, 6542, subd. 2). Assuming

therefore, that Rhoades got title to the note, *prima facie,* as the result of the indorsement and delivery of it to him, then these provisions of Code section 5903, come into play: "The title of a person who negotiates an instrument is defective when he obtained the instrument, or any signature thereto, by fraud * * * or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud." In virtue of his position as agent of the plaintiffs, Rhoades became aware of the Forbis mortgage, and became charged with the duty to secure its satisfaction for the benefit of his principals out of funds furnished him for the purpose of acquiring clear title to the land. He could not, without fraud, obtain the note, and with it the mortgage, for himself (1 Mechem on Agency, secs. 1198, 1199, 1210) ; and if in doing so he got any title at all, it was such as could and would be overthrown whenever his principals might choose to assail it in his hands. Neither, having the note, could he assign it as his own without a flagrant breach of faith, but by that very fact would pass a title so defective that the respondents, acting with reasonable diligence after discovery of the fraud, could easily defeat it.

(c) Finally, there is reason for the view that the act of [4] Rhoades in paying the mortgagee canceled the debt and satisfied the mortgage, even though such was far from his intention. An interesting and informing case of analogous character may be found in *Gearon* v. *Kearney,* the first report of which (22 Misc. Rep. 285, 50 N. Y. Supp. 26) is cited and quoted by the present appellants as supporting their contention, but which was reversed on appeal (*Gearon* v. *Greene,* 32 App. Div. 258, 52 N. Y. Supp. 1013), and retried with an exactly opposite result, subsequently affirmed (47 App. Div. 636, 62 N. Y. Supp. 48). In that case, Kearney, the owner, retained Nafis, an attorney, to procure a loan for the purpose of paying off two existing mortgages duly recorded, and running, respectively, to one Roberts for $1,800, and to one McCann for $1,200; to this end Kearney under Nafis' instructions, executed a mortgage for $3,000 running to one Anderson, and Nafis, out of the

proceeds paid Roberts the amount of his mortgage, but, instead of satisfying it of record, took an assignment of it to Anderson. Later Nafis caused all these mortgages to be assigned to himself, and thereafter transferred them to different parties in the following order: First, the $3,000 mortgage, with the representation that it was a prior mortgage; next, the Roberts mortgage; and lastly, the McCann mortgage. The question presented by the litigation was the right of the innocent purchasers of the Roberts and McCann mortgages, which were prior of record, to prevail over the innocent purchaser of the $3,000 mortgage, and in the final disposition of it the court said: "The evidence of Kearney shows that he executed the $3,000 mortgage for the purpose of raising that amount to apply in discharge of the two existing mortgages on the property, and that Nafis agreed to so apply such money. The evidence of Mrs. Anderson is to the effect that she gave the $3,000 to Nafis to be invested on a first mortgage, and that he agreed with her to make such investment. By reason of these agreements of Nafis with Anderson and Kearney, it became his duty to apply the sum received from Mrs. Anderson in satisfaction and discharge of the earlier mortgages. When, therefore, instead of satisfying the $1,800 mortgage, he took an assignment of it to Mrs. Anderson, the transaction operated as a payment despite the form or shape it assumed. * * * By the assignment from Mrs. Anderson to Nafis the rights of the latter could not be greater than those of the former. * * * As to the $1,200 mortgage the case differs, in that Nafis did not pay it and take an assignment, until after he had assigned the $3,000 mortgage. * * * But Nafis, at the time he took the assignment of this mortgage, was still under agreement with the owner of the land to pay off and discharge that mortgage with the proceeds of the Anderson mortgage. Part of those proceeds were still in his hands for that purpose, or at least such is the presumption of law. When he took up the mortgage and had it assigned to himself, as against the owner of the land the mortgage was paid. Nafis could have maintained no action upon it. The result was

that, before either of these earlier mortgages was assigned to the plaintiff, they were, as a matter of law, paid and satisfied, though not discharged of record.''

The suggestion is made that, as between the appellants and the respondents, the latter should suffer, because it was their [5] fault that Rhoades was enabled to present himself to the appellants in the aspect of an owner of the note and mortgage. This, in the absence of anything to create an estoppel as against the respondents, ignores the duty of inquiry put upon the purchaser of past-due paper. The debt evidenced by the note was by virtue of the mortgage, made a charge upon specific lands the title to which stood of record in the Northwestern Improvement Company, and that company would be called on, of necessity, to pay in place of the original maker. Its equities were not latent equities of third parties, but equities of a party directly interested, and the simplest inquiry of it would have informed the appellants that these equities were such that nothing of value could be conveyed to them by Rhoades. In the last analysis, therefore, the fault was the appellants, and for it they must suffer.

The judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.